[No. 6,356.—Department No. 1.]

## CROWLEY v. THE GENESEE MINING COMPANY.

CORPORATIONS—CONTRACT — AGENT.— The common-law rule that a corporation has no capacity to act or to make a contract, except under the common seal, has been long since exploded in this country; and the authority of an agent to make a contract may be inferred from his admitted relations to the corporation, or from its course of business. *Held*, accordingly, in an action against a corporation, upon a contract made with one who was admitted to be the president and superintendent and general managing agent of the corporation, that this admission was sufficient evidence of his authority to make the contract, and that it was unnecessary to show any vote or other corporate act giving him such authority.

APPEAL from an order denying the defendant a new trial, in the Twenty-first District Court, County of Plumas. CLOUGH, J.

*J. C. Chapman*, and *J. D. Goodwin*, for Appellant.

The authority of Quin to make the contract could not be implied from his admitted relation to the defendant. (*Gashwiler* v. *Willis*, 33 Cal. 11; *Yellow Jacket* v. *Stevenson*, 5 Nev. 224.) It was competent for the defendant to show that it never authorized or ratified the execution of the contract. The president, managing agent, and superintendent of a corporation cannot, by reason of such relation bind the corporation. (*Hall* v. *Auburn T. Co.* 27 Cal. 255; *Blen* v. *B. R. A. Water & M. Co.* 20 id. 602; *Richardson* v. *S. R. W. & M. Co.* 22 id. 150.)

*W. W. Kellogg*, *R. H. F. Variel*, and *Haymond & Allen*, for Respondent.

The authority of Quin to make the contract is established from his admitted relations to the corporation. (37 Cal. 599; Civ. Code, §§ 2307, 2310, 2311, 2319, 2332, 2338; *Jones* v. *Clark*, 42 Cal. 180.)

McKEE, J.:

On the trial of this case in the Court below, it was admitted that one M. J. Quin was the president of the corporation, defendant in this case, and the superintendent and managing agent of its mines in Plumas County, and had full control of its business in

that county, its principal place of business being in the city of San Francisco. It was proved that he was the principal stockholder in the company. On the 11th of ˘September, 1877, Quin employed the plaintiff to work in a quartz mine in Plumas County, belonging to the defendant, for the purpose of taking out what is known as " tribute rock," and delivering it at the defendant's quartz mine, to be crushed by the company at its mill, free of cost or expenses to the plaintiff; and, as compensation for his services, one-half of, the gross amount of the proceeds of each crushing was to be paid to the plaintiff. On the 12th of September, 1877, the plaintiff went to work under this agreement of taking out rock from the mine, and continued to work for the defendant until January, 1878, when he was discharged by Quin.

Two crushings were made by the defendant, of rock taken out and delivered by the plaintiff: one on the 25th of October, 1877, and the other on the 7th of February, 1878. Of the proceeds of the first crushing, the plaintiff was paid according to the terms of the agreement. From the last crushing there was realized fifty and two-eighths ounces of gold dust, which was sent to the San Francisco mint for coinage ; and after paying all expenses and mint charges, there was due to the plaintiff over $400, which the defendant failed or refused to pay to the plaintiff; and hence this suit.

It is objected by the corporation, that the agreement which was made with the plaintiff by its president, superintendent, and managing agent, is not a contract, but a lease. But the agreement is a contract of employment under § 1965, Civil Code; and it is binding on the defendant if Quin had authority to make it. Plaintiff does not rely on the existence of an authority of record ; he did not claim, or prove, that the Board of Directors of the defendant had by resolution or order authorized Quin to make such a contract, or that the latter had ever informed the directors that he had made it. He himself claimed that Quin had authority from the admitted relations existing between him and the defendant.

Upon this theory the case was tried in the Court below ; and when the defendant offered to prove by Quin that the Board of Directors never authorized him to make such a contract with

the plaintiff or any one else, and that he never informed the board of the execution or existence of the contract, and that the directors knew nothing of it, the Court sustained an objection to the offer, and afterward refused to give the following instruction to the jury : " Neither the president, superintendent, nor the managing agent of the corporation can, by virtue of their said offices, execute such a contract binding the corporation." And, while the Court gave the following instruction to the jury, which was asked by the defendant, viz., " If. you believe from the evidence that the said Quin, as the managing agent or the superintendent of the defendant, entered into the contract charged in plaintiff's complaint, before you can hold this defendant liable for a breach of said contract, you must further find that either the Board of Directors authorized said Quin to make such contract, or that, after being informed of the nature of said contract, the Board of Directors ratified the same "—yet it accompanied the instruction with the following modification, viz. : " But the fact that such authority was given to the superintendent may be inferred from his admitted relations to the corporation defendant."

The question therefore arises, whether the appointment of an agent for a corporation to make a contract for work and labor, or services, upon the property of the corporation, must be made under seal or by resolution, or whether it can be inferred from the admitted relations of the agent to the corporation, or from the course of business of the corporation itself?

The common-law rule, that a corporation has no capacity to act, or to make a contract, except under its common seal, has been long since exploded in this country. Even in England, it has been found to be impracticable, so that the classes of cases which constitute exceptions to the rule have become so numerous that the exceptions have almost abrogated the rule. In the United States, nothing more is requisite than to show the authority of the agent to contract. That authority may be conferred by the corporation at a regular meeting of the directors, or by their separate assent, or by any other mode of their doing such acts. " If this were not so," says Mr. Chief Justice Redfield, " it would lead to very great injustice, for it is notorious that the transaction of the ordinary business of railways, banks,

and similar corporations in this country, is without any formal meetings or votes of the board. Hence, there follows a necessity of giving effect to the acts of such corporations, according to the mode in which they choose to allow them to be transacted. If this were not done, it would become impossible to dispose of such contracts with any hope of reaching the truth and justice of the rights and duties of the several parties involved. * * * This is merely holding corporations to such rules of action as they see fit to adopt for their own guidance and the transaction of their business." (*Bank of Middlebury* v. *Rutland R. R. Co.* 30 Vt. 159.) When, therefore, the defendant admitted, on the trial of the case in hand, that Quin was its president and superintendent, and general managing agent, this was sufficient evidence of his authority to make the contract with the plaintiff, and it was not necessary for the plaintiff to show any vote, or other corporate act, constituting him the agent of the corporation. It would not be in accordance with justice, or the interests of society, to allow corporations to deny the authority of such agents, or to repudiate contracts made by them for work and labor from which they derive benefit. So in *Goodwin* v. *The Union Screw Company*, where it appeared that the business of manufacturing screws was conducted under the general management of one of its directors, who made a verbal contract with the plaintiff to work, in the shop, at manufacturing screws for the defendant, the Supreme Court of New Hampshire held, that where one has the actual charge and management of the general business of a corporation, with the knowledge of the members, or the directors, this is sufficient evidence of authority, and the company will be bound by his contracts made on their behalf, within the apparent scope of the business intrusted to him. (34 N. H. 378.) And in *Boyington* v. *The Wilson Sewing Machine Company*, where it appeared that an architect had drawn plans for a building for a corporation, under a verbal contract made with one who was acting as president, executive manager, and principal stockholder of the company, the Supreme Court of Illinois held that the contract was binding upon the corporation. "A corporation," says the Court, "which suffers appearances to exist, and its officers and agents to so act, as to give one employed by such officers and agents reason to be-

lieye that he is employed by the company, becomes liable to such person as his employé to pay for the services rendered." (73 Ill. 534. See also, 29 Ala. 21; 7 Cranch, 309; 8 Wheat. 338; 12 id. 64.)

Hence, the Court below did not err in rejecting the evidence which was offered by the defendant, or in overruling the defendant's motion for a nonsuit, or in refusing to give to the jury the instructions which the defendant requested, or in modifying those which were given at the defendant's request.

Order affirmed.

Ross, J., and McKinstry, J., concurred.