[S. F. No. 1431. Department Two.—June 25, 1900.]

## M. J. FONTANA et al., Respondents, v. PACIFIC CAN COMPANY, Appellant.

UNSEALED CONTRACT OF CORPORATION—EVIDENCE—EXECUTION AND AUTHORITY OF OFFICERS UNPROVED.—A contract purporting to be executed in the name of a corporation by its president and secretary, but not bearing the corporate seal, is not admissible in evidence against the corporation, in the absence of proof of the genuineness of the signatures of the officers, and that they were authorized to execute the contract on behalf of the corporation.

ID.—CONTRACT RELATING TO STOCK—SEAL UPON CERTIFICATES.—The fact that the unsealed contract related to the transfer of stock of the corporation, the certificates of which were under seal, is immaterial, and cannot tend to show that the unsealed contract was sealed, or was authorized by the corporation.

ID.—ACTION UPON CONTRACT—MOTION FOR NONSUIT—GENERAL STATEMENT OF GROUNDS—INCURABLE DEFECTS—INAPPLICABLE RULE.—In an action upon such contract, a motion for nonsuit, stating generally "that no valid contract between the parties has been offered in evidence, and no proof has been made showing the plaintiff is

entitled to any judgment as against the defendant," though not sufficiently specific to bring it within the ordinary rule applicable to such motion, is not within that rule, where it appears that the defects of plaintiff's case are incurable, if they had been specifically pointed out. It appearing that there was utter failure to prove authority for the contract, and that, under a proper construction of the contract, the plaintiff had no cause of action, the motion for nonsuit should have been granted.

ID.—CONSTRUCTION OF CONTRACT—OPTION TO PURCHASE STOCK OR TO RESCIND—GUARANTY OF DIVIDENDS.—A conditional contract for the transfer of stock by a corporation to a partnership in consideration of its note at six per cent providing for an option to pay the note and take the stock from escrow before a fixed date, or to rescind the contract on or before such date and guaranteeing dividends on the stock to the firm from the date of the contract, and to make good to the firm all deficiencies below ten per cent per annum, and, if none are paid, to pay the firm ten per cent per annum on the amount of the note from date until rescission, is to be construed as providing not for annual dividends, and for treating each year as separate, but that the total dividends declared while the contract is to run shall amount to ten per cent per annum.

ID.—ELECTION TO RESCIND—FULFILLMENT OF GUARANTY—No CAUSE OF ACTION.—Where the firm elected to rescind the contract, and, at the time of rescission, the total dividends declared exceeded ten per cent on the amount of the note, after deducting the interest thereon, the firm has no cause of action against the corporation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. W. R. Daingerfield, Judge.

The facts are stated in the opinion.

Olney & Olney, for Appellant.

Napthaly, Freidenrich & Ackerman, for Respondents.

CHIPMAN, C.—Plaintiffs sued to recover a balance due upon the following contract alleged to have been entered into by plaintiffs and defendant on the day of its date:

"Agreement between the Pacific Can Company and Fontana & Co., both of the city and county of San Francisco.

"That the former shall sell to the latter two hundred and fifty (250) shares of the capital stock of the Pacific Can Company, at two hundred (200.00) dollars per share. Payment to be made by the latter's note for fifty thousand (50,000) dollars, one day after date, with interest at six per cent per annum.

"Both stock and note to be placed in escrow at the Anglo-California Bank, subject to the following conditions:

"Said Fontana & Co. may take up said note with accrued interest and receive said stock in satisfaction thereof at any date prior to February 1, 1896, or they may require that said note be returned to them provided said stock be returned to the Pacific Can Company at any date before February 1, 1896, interest on said note being paid to the date of said return.

"Said Pacific Can Company agree that all dividends declared on said stock up to either of the above dates shall be paid to said Fontana & Co., and that said Pacific Can Company will make good to Fontana & Co. any deficiencies in said dividends below ten (10) per cent per annum. Should there be no dividends paid, then the Pacific Can Company agree to pay Fontana & Co. ten per cent interest on the amount of the note from the time of the purchase of the stock until the cancellation of the note and the return of the shares.

"Said stock shall be returned to said Pacific Can Company and said note to Fontana & Co. on February 1, 1896, under the above conditions as to interest and dividends if the latter should not previously assume ownership in either way above provided.

"Signed in triplicate.

"San Francisco, April 25, 1894.

"PACIFIC CAN COMPANY,
"By JOHN LEE, President,
"A. D. CUTLER, Secretary.
"FONTANA & CO."

Defendant denied specifically the allegations of the verified complaint and set up a cause of action for damages against plaintiffs on account of an alleged agreement on their part to purchase cans for the year 1895 from defendant. Plaintiffs purchased no cans from defendant for that year. The court found against defendant on this issue, and as the evidence was conflicting defendant does not urge the claim here. The court found that the contract of April 25, 1894, "was executed on behalf of defendant by its president and secretary, and the execution of said contract by said officers was not without authority of its board of directors, and was not without authority

of law. Said contract was duly made and executed by said corporation." This finding is attacked as unsupported by the evidence, the defendant claiming in its answer and at the trial that the contract was unauthorized and void. Plaintiffs had judgment for two thousand four hundred and fifty-eight dollars and thirty-five cents, with interest at seven per cent per annum from February 1, 1896. Defendant appeals from the judgment, and brings the evidence up by bill of exceptions.

Plaintiff offered in evidence the contract sued upon, which is set out *supra*. The record reads as follows: "Said document [the contract] was not under the seal of the corporation. The witness testified that there were three originals of said document, and that the one shown here was one of the originals. Thereupon the counsel for the plaintiff offered it in evidence." Defendant objected on the following grounds: That the corporation had no authority to execute any such contract; that upon its face it appears to be *ultra vires;* that it is contrary to public policy and void; that it does not purport to be executed by the corporation in this, that it is not under the seal of the corporation, and there is no proof yet that the signatures of the officers are their genuine signatures, nor that they were authorized to make the contract. The objections were overruled and the contract was admitted in evidence, defendant reserving an exception. Plaintiffs cite in support of the ruling *Pixley v. Western etc. R. R. Co.*, 33 Cal. 183[1]; and *Crowley v. Genesee etc. Co.*, 55 Cal. 273. Plaintiffs do not claim that there was any evidence, and there was none, showing that the directors of the corporation had, by resolution or by any other action, official or otherwise, authorized the president and secretary to make the contract; there is no evidence that either of these officers was clothed with general or special powers to make such a contract, or had any powers from which it might be inferred that they or either of them could make such a contract; there was no corporate seal attached; there is no evidence or claim of subsequent ratification by the directors of the corporation. The Pixley case is not authority for the broad proposition that the partial execution of a contract by a corporation raises the presumption of authority to make it. The presumption in that case arose from the established acts

[1] 91 Am. Dec. 623.

of the directors of the corporation, as well as from the part execution of the contract. In the case here there is no evidence that the directors ever knew of the contract, much less authorized it by their conduct or acts. Nor does it follow, as is claimed, that the contract was under seal because it was executed and because the certificate of the shares issued under the contract was under seal. It is affirmatively shown that the contract bears no seal of the corporation, and its absence is not accounted for in any way. The seal on the certificate of shares is not the slightest evidence that a seal was attached to the contract. Besides, whatever presumption arose that the seal was attached was overcome by the admission that in fact no seal was attached. The principle decided in the Crowley case has since been approved and is not now questioned. But in that case it was admitted that the president of the corporation, who made the contract, was also superintendent and general managing agent of the mining corporation, and it was held that authority may be inferred from the admitted relations of the agent to the corporation, or from its course of business. No such facts appear here. We do not think the finding is supported by the evidence. (*Barney v. Pforr,* 117 Cal. 56; *Pauly v. Pauly,* 107 Cal. 8[2]; *Blood v. La Serena Land etc. Co.,* 113 Cal. 221.)

At the close of plaintiff's case defendant made a motion for nonsuit on grounds which, in our opinion, would not ordinarily have been sufficiently specific to bring it within the well-established rule as stated in *Daley v. Russ,* 86 Cal. 114, and cases there cited. (See, also, *Palmer v. Marysville etc. Pub. Co.,* 90 Cal. 168.) The rule, however, does not apply if the case is one that cannot be cured although attention be specifically called to the defects. (*Daley v. Russ, supra.*) Aside from the failure to make the proof of authority, we think the contract on which plaintiffs relied gave them no cause of action, and for this reason the motion for nonsuit should have been granted.

The court found that defendant paid plaintiffs a dividend of twenty-five dollars per share on two hundred and fifty shares November 1, 1894, amounting to six thousand two hundred and fifty dollars. Plaintiffs' contention is, and the trial court so construed the contract, that defendant agreed to guarantee a

[2] 48 Am. St. Rep. 98.

dividend of not less than ten per cent per annum, and to pay all dividends in excess of that amount; that the first dividend was paid during the first year and plaintiffs were entitled to all of it, less six per cent interest to be paid defendant on the note; that there being no dividend declared the second year the guaranty was to pay ten per cent for that year, regardless of the dividend already paid, and up to February 1, 1896, less interest on the note. We cannot so construe the contract. There was no guaranty that dividends should be declared once a year, or at any stated periods. The agreement was that "all dividends . . . . shall be paid to said Fontana & Co., and that said Pacific Can Company will make good to Fontana & Co. any deficiencies in said dividends (i. e., in such dividends as should be declared) below ten per cent per annum." This meant that for the period the contract was to run the dividends should amount to ten per cent per annum. This construction, it seems to us, is strengthened by what follows, to wit: "Should there be no dividends paid, then the Pacific Can Company agrees to pay Fontana & Co. ten per cent interest on the amount of the note from the time of the purchase of the stock until the cancellation of the note and the return of the shares." Simply stated, defendant agreed that in any event plaintiff should receive all dividends, no matter how large, and if no dividend was declared plaintiffs should receive the equivalent of ten per cent per annum on the amount of the note, less six per cent, or four per cent net. It is altogether probable that defendant understood the contract as to the purchase of cans to be that plaintiffs were to buy cans from defendant for the year 1895 as well as for 1894, otherwise there would seem to have been no reason for making the contract run to February 1, 1896, and there was evidence tending to show this to be the contract. There was evidence to the contrary, however, which the trial court adopted, and the finding as to this fact cannot be questioned here. But this view of the evidence taken by the court did not warrant it in finding the contract now before us to mean something different from its obvious import. To illustrate: Suppose no dividends whatever had been declared, what would have been the measure of plaintiffs' right to recover? Clearly, ten per cent per annum, less six per cent per annum to be paid defendant for the period of the contract.

Suppose the dividend declared had occurred at the end of the period instead of November 1, 1894, what would have been the rule of adjustment? Plaintiff would have been entitled to the dividend, much or little, and if in the aggregate it was less than ten per cent, after deducting six per cent, defendant would have been obliged to make good the deficiency; if more, plaintiff would be entitled to retain all of it, and the obligations of the parties would stand discharged so far as concerned dividends and interest. It will be observed that defendant's liability to make good any deficiencies in dividends did not accrue until the termination of the contract, for the deficiencies could not sooner be ascertained. The fundamental error of plaintiff's contention lies in the assumption that the contract contemplated and provided for annual dividends and that each year must be treated separately.

Plaintiff terminated the contract by notice January 23, 1896 —one year and nine months (lacking two days) from its date. The guaranty of ten per cent for this period amounted to eight thousand seven hundred and fifty dollars, and the interest, at six per cent, amounted to five thousand two hundred and fifty dollars, leaving a deficiency of three thousand five hundred dollars. The dividend paid was six thousand two hundred and fifty dollars, so that plaintiffs received two thousand seven hundred and fifty dollars more than the stipulated deficiency. The court found that plaintiffs were entitled to judgment for two thousand seven hundred and ninety-six dollars and sixty-six cents. We can discover no warrant for the finding or the judgment. The judgment should be reversed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed.        Temple, J., McFarland, J., Henshaw, J.