[Civ. No. 83.     Third Appellate District.—December 9, 1905.]

## CHARLES H. COLPE, Respondent, v. JUBILEE MINING COMPANY, Appellant.

MINING CORPORATION—APPOINTMENT AND COMPENSATION OF SUPERINTENDENT—BY-LAWS—POWER OF DIRECTORS—AUTHORITY OF MANAGER.—Where the by-laws of a mining corporation provide that the officers of the corporation, including the superintendent, shall be elected by the board of directors, and that the compensation and terms of office of all officers (other than directors) shall be fixed and determined by the board of directors, the manager of the corporation has no authority to appoint a superintendent or to fix his compensation.

ID.—RATIFICATION OF APPOINTMENT.—Where the board of directors, with full knowledge that a superintendent had been appointed by the manager, and was acting as superintendent of the mines belonging to the mining corporation, acted upon his reports as such, and treated him as the superintendent, they thereby ratified his appointment.

ID.—AGREED COMPENSATION NOT RATIFIED.—Though the evidence was sufficient to show that the manager had agreed with the superintendent for a salary of $200 a month and $50 a month for his expenses, and to entitle him to recover that amount from the manager, yet where it appears that the directors were ignorant of such agree-

ment, and acted upon information from the manager that the super-
intendent was to receive the manager's salary of $100 during the
manager's absence, and the superintendent claimed no further
salary until he had quit the employment, there was no ratification
by the directors of the agreed compensation.

ID.—LIABILITY OF CORPORATION—REASONABLE COMPENSATION—LAST
FIXED SALARY—UNTENABLE SUIT UPON AGREEMENT.—The corpora-
tion by ratifying the appointment of the superintendent by the
manager became liable to him for some compensation; and if he
had sued for the reasonable value of his services, he might have been
entitled to recover probably the last monthly salary fixed by the
board for the superintendent; but where the board had neither
authorized nor ratified the salary agreed upon between the superin-
tendent and manager, the superintendent cannot recover from the
corporation in an action upon such agreement.

ID.—RATIFICATION OF PART OF INDIVISIBLE TRANSACTION—INAPPLICABLE
PROVISION.—The provision of section 2311 of the Civil Code that
"ratification of part of an indivisible transaction is a ratification
of the whole," is inapplicable to the facts of this case, where the
appointment was ratified without ratifying the agreed compensation.

APPEAL from a judgment of the Superior Court of Tuol-
umne County, and from an order denying a new trial. G. W.
Nicol, Judge.

The facts are stated in the opinion of the court.

F. W. Street, for Appellant.

A. L. Levinsky, and J. F. Rooney, for Respondent.

BUCKLES, J.—This is an action by the plaintiff to recover
from the defendant, a mining corporation, the sum of
$1,995.19 for services rendered as superintendent of defend-
ant's mines in Tuolumne county, at the rate of $200 for salary
and $50 expenses per month. Plaintiff recovered judgment
for the amount, defendant moved for a new trial, which was
denied, and the appeal is from the order denying the motion
for a new trial and from the judgment.

The following is the by-law of defendant relating to officers
and compensation: "The officers shall be a president, vice-
president, secretary, general manager, and superintendent and
treasurer; which officers shall be elected by and hold office
at the pleasure of the board of directors. The compensation
and tenure of office of all the officers of the corporation (other

than directors) shall be fixed and determined by the board of
directors.'' L. B. Doe was a director and general manager
of said corporation, and received a salary of $100 per month.
The minutes of the board of directors show his election and that
his salary was fixed at $100 a month. The minutes of August
12, 1901, show that James B. Hamilton was elected superin-
tendent, and his salary fixed at $125 a month. Hamilton
resigned February 26, 1902, and the minutes show no further
appointment of superintendent, and no further fixing of su-
perintendent's salary. The actual employment of plaintiff
was made by the general manager, Doe, February 1, 1902.
He testified that all the compensation he promised plaintiff
was that he would turn over to him the $100 a month salary
he was receiving, and that plaintiff was to take Doe's place
in looking after the mine of the company and be his substi-
tute during the time he (Doe) should be absent, and that no
other or different compensation was ever mentioned between
them until plaintiff had quit the mines in October, 1902, and
was demanding the payment of his salary of $250 a month
from the company, when Doe thinks he may have asked plain-
tiff to put in his bill for the amount to the company, $250 a
month. Plaintiff testified that Doe promised him when he
employed him that his salary should be $200 a month and $50 a
month for his expenses. And, were the action against Doe to
recover the amount of $250 a month, we think the plaintiff
sufficiently corroborated to entitle him to recover from Doe.
The plaintiff did act as the superintendent at the mines after
Hamilton resigned, directed the mining work at the mines,
employed men, kept their accounts for labor, and drew checks
for their payment, signing his name as superintendent, which
checks were paid, and made weekly and monthly reports to
the board of directors, signing the reports for February, ''L.
B. Doe, by Chas. H. Colpe, Superintendent,'' and after that
signing all reports as superintendent, omitting the name Doe
''because I asked Doe, when employed, if he had a meeting
of the board of directors to appoint me as superintendent,
and he said, 'No'; and I said: 'If you will appoint me, will
it be sufficient?' He said, 'Yes,' and that I had better sign
reports in my name, 'L. B. Doe, per C. H. Colpe, Superintend-
ent,' till I get directors together. After these reports went in
so signed I called Doe up on telephone and asked him if every-

thing had been attended to, and that Doe answered that everything had been arranged satisfactorily, as they understood I was superintendent and to go ahead.'' Thereafter these reports were signed, ''Chas. H. Colpe, Superintendent,'' and were sent to Mr. Benton, the secretary of the corporation, were received, and acted upon by the board of directors. None of these weekly or monthly reports made any mention of the plaintiff's salary, and plaintiff testified that he never mentioned his salary to any of the directors but Mr. Doe until after he quit the mines in October, though he met other members of the board at different times during the time he was employed. President Tatum visited the mines and remained with him a week at one time, and the plaintiff visited the defendant's office in San Francisco several times and conversed with Mr. Benton, the secretary, concerning the business and work at the mines, and corresponded with the president and secretary, but the subject of his salary was never mentioned. The members of the board knew plaintiff was working for the company as its superintendent, but claim they understood he was merely substituting for Mr. Doe and that his compensation was what Mr. Doe was to receive, to wit: $100 a month. Plaintiff tendered his resignation on August 20, 1902, as superintendent, which was not accepted at that time, and plaintiff remained at the mines in the capacity of superintendent until the month of October.

It is claimed that plaintiff became a stockholder in the corporation, but this does not clearly appear. The questions to be determined are: Did Doe have power to employ a superintendent and to fix his compensation? If not, then were the services rendered by the plaintiff, and the information the board was furnished and had, sufficient to amount to a ratification so as to bind the defendant? The plaintiff sues for compensation as superintendent, and if he was superintendent, then he was one of the officers provided for by the by-laws. and as has been seen by a reference to said by-law there is but one way of selecting a superintendent and fixing his compensation, and this must be done by the board of directors. Mr. Doe, being the general manager, had power, as the title of his office indicates, to hire laborers and fix their compensation, and do all things incident to the carrying on of the work at the mines, and the corporation would be bound thereby. (*Crow-*

*ley* v. *Genessee M. Co.,* 55 Cal. 273, and cases there cited.)
But no power was vested in Doe as general manager to appoint
a superintendent or fix his compensation. It is a well-settled
rule that with regard to the appointment of agents and the
making of contracts private corporations are upon exactly
the same footing as natural persons, unless such corporation
is limited by its charter or by-laws to some particular method
to be pursued. (*Carey* v. *P. & C. Petroleum Co.,* 33 Cal. 694.)
And, if there is a provision of charter or a by-law requiring
the powers of a board to be exercised in some particular way,
then the thing must be done in that way, and all persons deal-
ing with such corporation must know what the limitation
of power is. "But when the charter of a corporation pro-
vides that certain officers may be elected and their sal-
aries fixed by a board of directors, and a president is thus
elected, but without salary being named, the law raises
an *assumpsit* on the part of the corporation to pay a rea-
sonable compensation for his services rendered after elec-
tion." (1 Beach on Private Corporations, 209.) But here
there was no election of plaintiff by the board, and he does
not sue in *assumpsit,* but on a contract. If the plaintiff
had the right to recover in the action, he must have such right
under the idea that the acts of Doe in appointing him super-
intendent and fixing his salary at $250 a month have been rati-
fied by the board, for it is evident he did not receive his ap-
pointment by the board, nor was his salary fixed by the board.
The rule laid down in *Gribble* v. *Columbus Brewing Company,*
100 Cal. 71, [34 Pac. 529], is: "That which is a principal may
authorize an agent to perform he may ratify when performed
by the latter without authority, and the same rule applies to a
corporation, where, with full knowledge of all the facts in-
volved, a principal reaps the fruits of an unauthorized con-
tract of his agent, and for some time yields acquiescence to its
provision, he will be deemed to have ratified it, and will be
estopped, as against one who has fully performed the con-
tract, from repudiating it to the injury of the latter. And
this doctrine applies to corporations equally with individ-
uals." The Civil Code provides:

"Sec. 1589. A voluntary acceptance of the benefit of a
transaction is equivalent to a consent to all the obligations

arising from it, so far as the facts are known, or ought to be known, to the person accepting.''

"Sec. 2310. A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof.''

There can be no doubt but the board had full knowledge and all the knowledge upon the subject that plaintiff was acting as superintendent of the mines, and that he had been appointed by Doe, and with this knowledge they acted upon the reports and treated him as the superintendent, and thereby ratified his appointment, and would, of course, be liable to him for some compensation. It could not be for the compensation promised by Doe, because such knowledge never came to the board. Doe informed the board that he was going away, and that he had put plaintiff in his place and would draw his (Doe's) salary, and to this Doe says the board agreed, and upon this the board seems to have acted all the way through, and therefore never spoke to plaintiff about his compensation, it being a matter about which the corporation would not be concerned, as he was to have the $100 a month the board had fixed as Doe's salary. The board was not in possession of all the facts as to plaintiff's salary, that body having been informed plaintiff was to have Doe's $100 a month. That Doe had gone to New York and to Mexico, plaintiff was in charge of the work at the mines, making weekly and monthly reports, and never including in any such reports any claim for or mention of compensation from the corporation, would be sufficient to confirm what Doe had told them. It cannot be said, therefore, that there was any kind of ratification by the board or any of its members of the contract for $250 a month salary. It is true the board might have gained the knowledge that plaintiff was claiming compensation at the rate of $250 a month had they inquired of the plaintiff; but under the circumstances detailed, that Doe informed the board that plaintiff was to take his salary as his compensation, and that at no time, from the time plaintiff went to the mines in January until he quit in October, did he lay any claim to compensation from the defendant, would excuse the board from making such inquiry. Had plaintiff

sued for the reasonable value of his services, he might have been entitled to recover, probably the amount the board had fixed as superintendent's salary, to wit, $125 per month. But the defendant has never fixed the superintendent's salary at $250 a month, and has done no act whatever to ratify the action of the general manager in fixing the salary.

It is claimed by respondent that the provisions of section 2311 of the Civil Code must prevail here, and that if the defendant ratified the contract of employment as superintendent, then it also ratified the contract as to amount of compensation. Section 2311: "Ratification of part of an indivisible transaction is a ratification of the whole." Under the peculiar facts shown in this case, we do not think this rule can apply here. There is, therefore, no evidence to support that part of finding 2 which finds that the defendant employed plaintiff at the agreed compensation of $250 a month, and there is no evidence to support the part of finding No. 9 which finds that defendant is indebted to plaintiff in the sum of $1,995.19 for salary as superintendent.

Judgment reversed, and cause remanded for a new trial.

Chipman, P. J., and McLaughlin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 10, 1906, and the following opinion was then rendered:

BUCKLES, J.—This is a petition for rehearing, and petitioner cites *Kelly* v. *Ning Yung Ben. Assn.* post. p. 460, 84 Pac. 321. Upon carefully considering the petition and the points referred to in said case, we find the case cited not applicable. The rehearing is denied.

Chipman, P. J., and McLaughlin, J., concurred.