In re FARMERS' DAIRY ASS'N.

In re LEVI.

(District Court, S. D. California, S. D. May 29, 1916.)

No. 2155.

1. BANKRUPTCY ⊙═140(1)—RETURN OF PROPERTY—WHAT LAW GOVERNS.
   In determining whether title to chattels passed to a bankrupt, or remained in the seller, the state law governs.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ⊙═140(1).]

2. BANKRUPTCY ⊙═140(1)—RETURN OF GOODS—RIGHTS OF SELLER.
   Where, under the state law, the seller's reservation of title was good as against the bankrupt and his creditors, such reservation of title is good as against the trustee in bankruptcy, and the goods may be reclaimed by the seller.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ⊙═140(1).]

3. SALES ⊙═460—CONDITIONAL SALES—STATUTES.
   A conditional sale, in the absence of statute, may be verbal.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1348; Dec. Dig. ⊙═460.]

4. SALES ⊙═454—CONDITIONAL SALES—EFFECT OF.
   The assumption of a positive obligation by a buyer to pay the purchase price does not in itself serve to change a sale, which would otherwise be conditional, into an absolute one.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. ⊙═454.]

5. SALES ⊙═454—CONDITIONAL SALES—NOTE.
   Where a buyer gave a note for the purchase price, that fact does not change the sale from a conditional into an absolute one, but the note must be taken as evidence of the debt owing rather than as a payment.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. ⊙═454.]

6. BANKRUPTCY ⊙═303(1)—CLAIM AGAINST TRUSTEE—BURDEN OF PROOF.
   One claiming property which passed to the trustee in bankruptcy, on the ground that the sale to the bankrupt was conditional, has the burden of proof; there being a presumption that the sale was absolute.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458, 459; Dec. Dig. ⊙═303(1).]

7. CORPORATIONS ⊙═406(2)—PRESIDENT—POWERS OF.
   A verbal understanding with the president of a corporation that title to horses should remain in the seller until payment is not binding on the

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

corporation, and where there was no further contract with the corporation, although the horses were delivered, there was no meeting of the minds of the parties as to the contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1612; Dec. Dig. ☞406(2).]

8. BANKRUPTCY ☞228—ORDERS—REVIEW—REFEREE.
In reviewing an order of a referee in bankruptcy, all presumptions with respect to the want or sufficiency of evidence are in favor of the order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. ☞228.]

9. BANKRUPTCY ☞140(1)—RIGHT TO GOODS—CONTRACTS.
Where there was no meeting of minds between a corporation and a seller of horses, there being no binding agreement as to whether title should pass, the seller may, upon surrender of notes given to evidence the purchase price and of all moneys paid, less the reasonable value of the use of the horses while in possession of the corporation, recover the animals from the trustee; the corporation having become a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ☞140(1).]

In Bankruptcy. In the matter of the bankruptcy of the Farmers' Dairy Association. Proceeding by Adolph Levi for review of order of referee denying his petition for the return of property. Order of referee reversed, and matter remanded for further hearing.

Adolph Levi filed his petition "in reclamation" for an order for the return to him of certain horses held by the trustee and which he alleged had been sold to the bankrupt on conditional sale, title to remain in him till full purchase price was paid. The referee, after hearing, ordered that said petition be "dismissed and denied." A review by the judge was sought.

The referee's certificate on review contained merely a summary of the evidence on which his order was based, and showed that one Peavey, called in behalf of petitioner, testified that he, during the times mentioned in said petition, was the president of the said Farmers' Dairy Association, the bankrupt, and "at certain times during said period was manager of said Farmers' Dairy Association"; that he had certain dealings with the petitioner relative to the purchase of certain horses; that "on or about the ——— day of ———, 1915," witness had a conversation with petitioner relative to purchase of said horses for the association, another official of the association being present. Witness and petitioner negotiated for the sale of said horses, and witness understood that title to said horses was to remain in the seller until the purchase price therefor had been paid. The contract and the understanding were verbal; the promissory notes of corporation representing the purchase price were given by the corporation, as was understood by witness and petitioner should be done. Other transactions, involving other horses, and under similar circumstances, were also had between petitioner and the witness. The witness also testified "that the matter of said purchase was brought to the attention of the board of directors of said corporation, and they took action on same; that said corporation asserted indicia of ownership over said horses, and used said horses in the business of said corporation; that said horses were carried on the books of corporation as the property of said corporation, and monthly statements were gotten out by the corporation to the creditors, in which statements said horses were carried as an asset of the corporation." Witness further testified that one Stephenson was the secretary of the corporation at the time of the purchase of the last five horses, and witness did not state the horses were purchased on conditional sale, and did not state that title of said horses was to remain in seller until paid, nor was anything said to Mr. Stephenson concerning any conditions under which the horses

were purchased. Other evidence of similar import, given by other persons, was also set out in a summary way in the certificate of the referee.

The secretary of the corporation was called, and testified that he was informed by Mr. Peavey, the president, that he had purchased certain horses from the petitioner, and that the company would have to give its notes therefor; that no statement was made as to any condition attached to the sale of the horses, and that the witness considered that the notes were given in payment of the purchase price; "that witness did not know, nor did Mr. Peavey tell him, that the title to said horses was reserved in the seller; that witness was also a member of the board of directors of said corporation, and the board of directors took action on said matter." The only action shown by the certificate to have been taken by the board of directors was an excerpt copied from the minutes of the corporation, which excerpt in substance set forth that it was regularly moved and seconded that the horses in question "be purchased" at a certain price and on certain terms with respect to time of payment specified. It was also shown by the books of the corporation that the horses were entered on the books as an asset and that statements were issued showing this fact.

The promissory notes given by the corporation were in ordinary form, and contained no statement or intimation of any "conditional sale."

James E. O'Keefe, of San Diego, Cal., for petitioner.
A. L. Wissburg, of San Diego, Cal., for trustee.

BLEDSOE, District Judge (after stating the facts as above). In this case, from the certificate sent up by the referee, it is impossible to determine the reasons which actuated him in arriving at the conclusion as to which a review is sought, and which resulted in the conclusion complained of. The order entered by the referee is merely to the effect that the petition of reclamation filed by petitioner Levi is dismissed and denied. The court is not advised, therefore, of the findings of fact and conclusions of law, if any, arrived at by the referee.

[1-5] In a proceeding of this character, respecting ownership and title to property, the law of the state wherein such property is situate controls. In California, it may be considered as established that, in a contract of sale such as was relied upon by petitioner herein, the title to chattels sold may be retained by the seller pending full payment of the purchase price, or the performance of any other conditions named by him. This reservation of title by the seller is good as against creditors, and consequently as against the trustee in bankruptcy of the buyer. Perkins v. Mettler, 126 Cal. 100, 58 Pac. 384; Van Allen v. Francis, 123 Cal. 474, 56 Pac. 339. The contract may be verbal, unless some local statute requires otherwise. Blackwell v. Walker (C. C.) 5 Fed. 419. No such statute of California has been called to my attention. The assumption of a positive obligation by the buyer to pay the purchase price does not in itself serve to change a sale which otherwise would be conditional into an absolute one. Neither is it to be assumed by the court, in the light of present-day business transactions, that the giving of a promissory note is to be considered as payment and complete satisfaction in itself of the obligation therein represented and thereby ordinarily sought to be evidenced. In other words, in the absence of any contrary proof, the court, in accordance with usual business procedure, must assume that a promissory note is given as evidence of a debt owing, rather than as payment and satisfaction thereof.

[6-8] Under the evidence in this case, therefore, if it were the fact that a contract was shown to exist, as between the petitioner and the bankrupt corporation, providing for the conditional sale of the horses mentioned in the petition, and title was to vest only upon full payment therefor, it would follow that the petition should have been granted, and that the order made by the referee should be reversed in its entirety. There is a matter involved, however, which arises upon the record, and which has impelled the court to give to the proceeding some consideration other than that suggested by arguments of counsel.

All the authorities seem to hold that in a proceeding of this sort the burden of proof rests upon him who claims the sale to have been conditional rather than absolute. In other words, upon the transfer of personal property and the receipt of promissory notes in payment therefor, the presumption ordinarily would be that an absolute sale was intended and had been effectuated. The bankrupt in this case is a corporation, and the petitioner must have shown a contract as between himself and the corporation, if he would sustain his claimed reservation of title. The record, which consists merely of a summary of the evidence taken before the referee, obviously is very meager; but it does not, in my judgment, meet the burden imposed upon the petitioner. It fails to show that a contract was entered into between petitioner and the corporation. It does show that the petitioner had dealings with a Mr. Peavey, who was at said times the "president of the association," and was "at certain other times," but not necessarily at any times when sales of horses were being consummated, the "manager of the corporation," and that, in the sales which were made, verbal understandings were had that title to the respective horses was to be reserved by the petitioner until full payment of the purchase price. The mere fact that this arrangement was had with the president does not, in my judgment, under the authorities, serve to bind the corporation. Fontana v. Pacific Can Co., 129 Cal. 51, 61 Pac. 580. There is no suggestion anywhere in the record that the corporation itself was at any time, through its board of directors or otherwise, apprised of the fact that a reservation of the title to the horses was a part of its contract. On the contrary, as shown by the record, the contract of the corporation, as evidenced by the resolution of its board of directors, was that of an absolute sale.

There is no showing as to the number of directors of the corporation, or as to the number who were informed even privately of the understanding had between the petitioner and the president, and no showing, therefore, that the board of directors, or even a majority of the board, were advised of the fact of the reservation of title, or at all consented to or acquiesced in the verbal agreement purporting to retain title to the horses in the petitioner until the full purchase price therefor had been paid. In this connection it must be remembered that the referee has denied the petition, and because of this fact all presumptions with respect to the want or sufficiency of evidence are in favor of the validity of his order, and the court must not assume that evidence with respect to any matter was given which would be inconsistent with the conclusion reached by the referee, unless such evidence is succinctly set forth in the record brought to this court.

It thus appears, as I view the case, that the petitioner attempted by verbal understanding had with the president of the corporation, who, in so far as the record shows, was unauthorized to bind the corporation, to retain the title to his horses until the entire purchase price had been paid. In this he was unsuccessful, in so far as the actual negotiation of a contract was concerned, in that the president was not authorized, apparently, to bind the corporation in this respect. The purchase price not having been paid, it would not be proper, however, to hold, as did the referee, that the petitioner now be deprived of the title to his horses. He consented to no such arrangement, entered into no such contract, and the court should not by its judgment decree that he did. It must be that as to the matter of the retention of the title to the animals there was no meeting of the minds sufficient to constitute a conditional sale contract, and the rights of the parties will have to be determined on some other basis.

[9] Though this feature of the case has not been argued by, or presented in the briefs of, counsel, it seems to me that under the circumstances the only fair and equitable thing to do is to hold that the petitioner is still the owner of the horses, and that the bankrupt corporation is entitled to a return of so much of the purchase price as has been paid thereon, less such a sum, not to exceed in any event the amount of the purchase price thus far paid, as will suffice to reimburse the petitioner for the reasonable value of the use of the horses during the time they were in the possession of the bankrupt and up to the date of the adjudication herein.

The order of the referee is therefore reversed, and the matter remanded for further hearing by him. Upon such further hearing he will take evidence and determine the reasonable value of the use of the horses during the period mentioned, and will make an order directing the trustee to return the horses to the petitioner, upon the repayment by the petitioner of all sums of money received by him as part of the purchase price of the said horses in excess of the amount which he may be entitled to retain as the reasonable value of such use. Petitioner will also be directed to deliver up for cancellation the promissory notes received by him as evidence of the purchase price to be paid.