[L. A. No. 6423. Department One.—March 28, 1921.]

## WESTERN LITHOGRAPH COMPANY (a Corporation), Respondent, v. VANOMAR PRODUCERS (a Corporation), Appellant.

[1] CORPORATIONS—PURCHASE OF LABELS FOR CANNING CORPORATION—AUTHORITY OF PRESIDENT AND GENERAL MANAGER.—The president of a fruit canning corporation who is also the general manager of the corporation and in general charge of its business has authority to contract for the purchase of labels without specific authority from the board of directors, since the matter of purchasing labels is but a detail of the business.

[2] ID.—PAYMENT OF INCREASED PRICE—UNAUTHORIZED AGREEMENT OF PRESIDENT—RATIFICATION.—Where the president and general manager of a canning corporation without special authority agreed to pay a price for labels in excess of the contract price, and the corporation accepted the labels and paid for them at the increased price for one season and part of another, there was an ample ratification.

---

1. Presumption as to authorization by corporation for contract executed by president, note, Ann. Cas. 1917A, 360.

[3] ID.—INCREASED COST OF MANUFACTURE—INSUFFICIENT CONSIDERA-
TION.—An agreement of a canning corporation to pay a price for
labels in excess of the contract price based solely on the increased
cost to the vendor of materials and labor in making the labels is
not supported by a consideration and is unenforceable.

APPEAL from a judgment of the Superior Court of Los
Angeles County.  L. H. Valentine, Judge.  Reversed.

The facts are stated in the opinion of the court.

Frank Bryant for Appellant.

E. A. Lane for Respondent.

OLNEY, J.—This is an appeal by the defendant, a corpo-
ration, from a judgment for the plaintiff in an action to
recover the price of certain labels sold and delivered by the
plaintiff to the defendant.  It appears that the defendant
is a fruit canning concern requiring labels for its goods, and
the plaintiff is a maker of labels.  In February, 1916, they
entered into a formal contract in writing whereby the de-
fendant agreed to buy of the plaintiff and the plaintiff
agreed to furnish the defendant all the labels the latter
should need during the next ensuing five years at certain
specified prices dependent upon the character of the labels
ordered.  The contract was performed for the year 1916 at
the prices specified.  By June of the next year, however,
the cost of materials and labor had increased greatly, with
a consequent increase to the plaintiff of the cost of making
labels.  This was represented to the president and general
manager of the defendant, and he was requested to agree
to a flat increase of thirty-five cents per thousand on the
contract prices.  This he did by letter dated June 15, 1917,
addressed to the plaintiff, and reading:

"Gentlemen:

"Referring to the conversation held between your Mr.
Courtlander and the writer, we wish to say that we shall be
very glad to pay you a sum equal to 35c per M., beyond our
contract price, for all labels which we may receive from you
this season's pack.

"We appreciate the efforts you have made in the past to
meet our wishes and requirements and thoroughly under-.

stand some of the obstacles which confront you in the endeavor to take care of your large business this season.''

The labels for 1917 were delivered and paid for at the increased rates. Those for 1918 were likewise delivered and payments on account made. There was, however, an unpaid balance of some six thousand seven hundred dollars at the original contract prices, and of some nine thousand four hundred dollars at the increased prices, and for the latter sum the present action was brought. The defendant's answer admits liability for the six thousand seven hundred dollars, but denies it for anything over that amount. The plaintiff recovered judgment for the nine thousand four hundred dollars, and the defendant appeals.

It is evident that the defendant's liability for the difference between the two sums mentioned, which is all that is in controversy, turns on the validity of the defendant's promise to pay the extra thirty-five cents per thousand evidenced by the letter quoted. The defendant advances two grounds why the promise is not valid—first, that the defendant's president had no authority to give it, and, second, that it is not supported by a consideration.

[1] The first of these grounds cannot be sustained. It is true that the original contract was formally executed in the name of the defendant by its president and secretary and under its seal and with authority from its board of directors, while the letter was not under seal, was signed by the president only, and was not authorized by the defendant's board of directors, who knew nothing about it. But the fact was that the president was also the general manager of the corporation and in general charge of its business, that the matter of purchasing labels was but a detail of that business, and that the president was permitted by the defendant to make other contracts of similar nature, either for the purchase of supplies or for carrying on the regular business of the company in other respects, without reporting them to the directors or securing specific authority from them. This was enough. The authorities on the point are numerous, and the more modern ones are practically without conflict. It is necessary only to refer to *Crowley* v. *Genesee Min. Co.*, 55 Cal. 273, and *Aigeltinger* v. *Burke*, 176 Cal. 621, [169 Pac. 376], where, at page 626, the following is quoted with approval:

" 'Where one has the actual charge and management of the general business of a corporation, with the knowledge of the members, or the directors, this is sufficient evidence of authority, and the company will be bound by his contracts, made on their behalf, within the apparent scope of the business intrusted to him. . . . A corporation which suffers appearances to exist, and its officers and agents to so act, as to give one employed by such officers and agents reason to believe that he is employed by the company, becomes liable to such person as his [its] employee to pay for the services rendered.' "

[2] Furthermore, it made no difference whether the defendant's president originally had authority or not. It accepted the labels and paid for them at the increased price for one season and part of another. This was an ample ratification. (*McKell* v. *Chesapeake etc. Co.*, 175 Fed. 321, [20 Ann. Cas. 1097, 99 C. C. A. 109].)

[3] The second contention of the defendant, however, must be sustained. A naked promise unsupported by a consideration is not enforceable, and a consideration is defined by the code (Civ. Code, sec. 1605), as follows: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

Now, the letter of June 15, 1917, was merely an agreement to pay an increase over the prices at which the plaintiff was already lawfully bound to the defendant to deliver labels. It is evident that because of the promise the defendant received no benefit, nor was it agreed that it should receive any, to which it was not already lawfully entitled. It is likewise evident that the plaintiff did nothing and agreed to do nothing which it was not already obligated to do. A plainer case of a mere naked promise it would be difficult to imagine. The courts in some instances have held that where one party to a contract refuses to go on with it, and the other party to induce him to go on promises to pay him additional compensation, such promise is supported by a consideration. The theories upon which this conclusion is reached are various and it is exceedingly doubtful if any of

them are sound. (*Alaska Packers Assn.* v. *Domenico,* 117 Fed. 99, [54 C. C. A. 485].) The authorities are collated and their different rules well stated in 13 Corpus Juris, 351–355. But so far as we are aware, the authorities are in practical agreement that where, as here, all that appears is that one party found himself with a losing contract and, without abandoning it, requested the other party to pay him more, which the other party promised to do, the promise is without consideration.

It is stated in Corpus Juris (volume 13, page 355) that "In Minnesota the court, while adopting the view that the obligation imposed by a contract is to perform the contract and not to pay damages, and that there is ordinarily no consideration for a promise of additional pay to induce performance, introduces the anomalous exception that, where the party refusing to complete his contract does so by reason of some unforeseen and substantial difficulty in the performance of the contract, which was not known or anticipated by the parties when the contract was entered into, and which cast on him an additional burden not contemplated, and the opposite party promises him extra pay or benefits if he will complete his contract, and he so promises, the promise to pay is supported by a valid consideration; . . . "

The plaintiff seeks to bring the present case within this supposed rule of the Minnesota cases because of the unexpected increases in the cost of manufacture which confronted it. But surely unexpected increases in manufacturing costs are just the risk which every manufacturer assumes and contemplates when he enters into a contract to make goods for future delivery. Furthermore, an examination of the Minnesota cases will show that the unforeseen difficulties to which they refer are difficulties existing by reason of facts unknown to the parties when they enter into the contract, so that it was entered into under a mistake. (*Michaud* v. *MacGregor,* 61 Minn. 198, [63 N. W. 479]; *King* v. *Duluth etc. Co.,* 61 Minn. 482, [63 N. W. 1105].) In the latter case it is said: "Inadequacy of the contract price which is the result of error of judgment, and not of some excusable mistake of fact, is not sufficient." Whether the rule of these cases be correct or not, it has no application to a case where the increased costs of the contractor are due

merely to fluctuations in the market price of labor and materials. The risk of such fluctuations is a burden which he necessarily contemplates and assumes when he makes the contract. Such, and such only, is the present case.

Judgment reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.

Shaw, J., Lawlor, J., Wilbur, J., Olney, J., and Sloane, J., concurred.