[Civ. No. 4497. Second Appellate District, Division Two.—November 4, 1927.]

ELLA W. PEASLEY et al., Appellants, v. PRODUCERS MARKET CO., INC. (a Corporation), et al., Respondents.

Daly, Daly & Todd and Newton M. Todd for Appellants.

Herbert Moore for Respondents.

PEAIRS, J., *pro tem.*—In this case the appeal is from a judgment in favor of the defendants in an action brought by the plaintiffs for the collection of certain payments on a lease and the note for $1,200, given for the last six months' rental under said lease, which lease purported to rent lots 13 and 15 of Block 91, Long Beach township, county of Los Angeles, state of California, for a period of four years and four months, at a total rental of $9,800, and was signed "Producers Market Company, a corporation, per T. W. Burnam," without seal. The date of both note and lease was the tenth day of November, 1921. Lease rentals were payable at the rate of $150 a month on the first day of each month for the first year, beginning December 1, 1921, and the the rate of $200 per month on the first day of each month thereafter

during the term of the lease. Plaintiffs prayed for judgment for $1,200 and interest at eight per cent and a further sum of $120 attorneys' fees and an additional sum of $600 for four months' accrued rentals. This action was filed on March 31, 1922. The note was signed "Producers Market Company, per T. W. Burnam." The Producers Market Company, Incorporated, and T. W. Burnam, defendants, failed to answer and a default judgment was taken in accordance with the prayer of the complaint, which default judgment was later set aside and vacated by stipulation of counsel. The answer of the defendants was that the lease and note were signed "Producers Market Company, per T. W. Burnam," but for no consideration and without any authority on the part of the said T. W. Burnam, and further alleged that on or about the sixth day of February, 1922, the said plaintiffs were notified by the Producers Market Company that said note was executed without authority and written notice given to the plaintiffs in the following language:

"Long Beach, California, February 6th, 1922.
"Samuel C. Peasley and Ella W. Peasley,
  ".19 East 5th Street, Long Beach, California.

"Dear Sir and Madam: You will take notice that that certain lease entered into by yourselves as lessors on November 10th, 1921, whereby certain premises described as follows: Lots Thirteen (13) and Fifteen (15), in Block Ninety-one (91), of Long Beach Township, in the City of Long Beach, County of Los Angeles, State of California, as per map recorded in Book 19, Page 91 et seq. Miscellaneous Records of Los Angeles County, was leased to the Producers Market Co., a corporation, for a term of four (4) years and four (4) months, commencing on December 1st, 1921, and ending on March 31st, 1926, at an aggregate rental of Nine Thousand Eight Hundred Dollars ($9,800), was done without the authority and consent of the Board of Directors of said Producers Market Co., a corporation. You will further take notice that at a meeting of the Board of Directors of said Producers Market Co., a corporation, held on February 6th, 1922, in the City of Long Beach, California, a resolution was duly passed by said Board of Directors disaffirming the action of the president in signing said above-mentioned

lease, and that said lease was declared to be null and void and not binding on said Producers Market Co., a corporation, and that notice in writing of such action by the Board of Directors be given you. You are, therefore, notified that the Producers Market Co., a corporation, disclaims any and all interest in and to said lease, and likewise refuses to be bound by any of the terms, conditions and covenants contained therein.

"Dated this 6th day of February, 1922.

"PRODUCERS MARKET Co., a Corporation,

"By T. W. BURNAM, President.

"(Seal)                    Attest: Y. MIZUNO,

"Treasurer T. B."

No money was ever paid on account of the note nor on account of the lease except $150, paid by T. W. Burnam, which, it is alleged, was by check of the Producers Market Company, signed by T. W. Burnam personally, whether in his official capacity or not is not disclosed by the transcript.

The lots 13 and 15, described in the lease are stated to be directly across the alley from lots 14 and 16 occupied by the Producers Market Company.

There seems to be no dispute in the evidence nor between counsel about the location of the two properties, nor as to the fact that T. W. Burnam signed the name "Producers Market Company, per T. W. Burnam," to both the note and the lease, and that at the time of signing was president of the Producers Market Company.

The evidence shows that Mrs. Peasley, plaintiff, asked Burnam if it was all right for him to sign it and make it and have another signature, and he answered that he was secretary and president and main stockholder, and what he said went. This shows knowledge of irregularity.

From the minutes of the Producers Market Company of February 6, 1922, and from all the evidence in the transcript it would appear that there was never any formal authorization to said T. W. Burnam to enter into a lease or to sign a note, and that when the matter was presented to the company at their meeting on the sixth day of February, 1922, it was voted to reject the lease signed by said T. W. Burnam, therefore the decision in this case rests almost entirely upon the question of the implied or ostensible authority of the

said T. W. Burnam to act as agent for the Producers Market Company by virtue of his position as president and secretary of said company.

From the reporter's transcript of the testimony in this case the only evidence that authority was given T. W. Burnam to obtain a lease, was an agreement under date of August 15, 1921, between two of the Japanese who were directors of the company with said T. W. Burnam, which designates, among other things, that the said Burnam was to take steps to organize the Producers Market Company, and further to obtain a lease to lots 14 and 16 in block 91 for five years for the sum of $1,200, which is equivalent to about $20 per month for the two lots. The evidence, however, shows that all that was done was done in the name of T. W. Burnam and that the Japanese refused to enter into the contract on the building, which was afterward constructed, and that that was done in the name of T. W. Burnam.

The evidence further shows that of the five directors of the Producers Market Company, four were Japanese. It further shows that on the tenth day of November, 1921, the assets of the Producers Market Company were only what had been realized on the 15 shares of stock subscribed upon incorporation, and that what they then had on hand was about $100; it further shows that the Producers Market Company never had a lease and did not at the time of this action hold a lease to the property occupied by them, as it stood in the name of T. W. Burnam at that time. The evidence does not show that any of the Japanese directors had knowledge of the lease obtained from the plaintiff until about the sixth day of February, 1922, at which time they rejected the same. The evidence does show that there was some talk about leasing said lots 13 and 15 at a rental not exceeding $50 per month, which it would appear was about two and one-half times the local rate of rental for such property as agreed to by the Japanese directors in the event of rental of lots 14 and 16 in said block 91. It is further well to note that at the time of the lease by the said Burnam from the plaintiffs, there was no building nor business conducted on lots 14 and 16, and that had the plaintiffs known all that there was to know, as shown by the evidence, there would have been no authorization either by act or consent or waiver on the part of the Japanese directors for leasing,

signing notes, or making agreements of any kind without their action as a board, other than in the regular buying and selling of produce. The mere fact that certain checks of the company were used by T. W. Burnam and signed by him as president and secretary, and especially the one which was given as a first payment of rental under the lease from the plaintiffs, would, if carefully examined, have shown that they were irregularly used and not in accordance with the by-laws of the company or the ordinary usages and customs of business. The evidence which shows that the plaintiffs received $150 on account of rental does not show that this was known to the Japanese directors or anyone but Mr. Burnam, connected with the Producers Market Company. It further shows no consideration received by the Producers Market Company whatever, nor does it show that plaintiffs saw either Mr. Burnam or any of the Japanese directors or any of the customers or employees of the Producers Market Company upon the said lots 13 and 15. Their only testimony being that they had seen Japs there whom they did not know and that there had been some market trucks on said lots and some rubbish burned there by Japanese, but the evidence neither shows that the trucks belonged to the Producers Market Company nor to any of its employees nor that even the burning of rubbish was by anyone authorized by the Producers Market Company. Neither is there anything in the evidence to show that if all the acts of the company during the period of eighty-seven days from the time the lease was entered into with Mr. Burnam and the rejection of the lease and notice by the Producers Market Company had been known to the plaintiffs in this action that it would have in any manner warranted them in believing that T. W. Burnam had authority to sign either notes or a lease or that anyone on behalf of the Producers Market Company had taken any possession of said lots 13 and 15, nor in any manner shown any knowledge of the lease of said property on the part of the company other than the said T. W. Burnam.

A portion of the by-laws of the Producers Market Company appears as follows: "The President shall be the chief executive officer, head of the company, and shall have general control and management of its business and affairs, subject to the control of the Board of Directors and Executive Com-

mittee; he shall sign all certificates of stock and all conveyances of real property executed in its behalf for the company and all contracts and documents required by the Board of Directors or necessary to carry on the business of the company. . . . The Treasurer shall safely keep all moneys of the company which may come into his hands from time to time and pay out the same upon check or draft of the president, countersigned by the treasurer or otherwise signed in pursuance of the order of the Board of Directors; keep accurate books of account of the transactions of his office, and generally perform all other duties pertaining to his office, or which may be required of him by the Board of Directors; he shall countersign all documents requiring the signature of the president as hereinbefore provided." These by-laws might, upon a first reading, indicate also authority to the president to sign certain documents, but if read carefully it will be noted that while the president is given general control of the business it is subject to the control of the board of directors and the executive committee, and neither the lease nor the note was ever approved by the board of directors or any executive committee. It is further to be noted that the treasurer of the company has charge of all moneys and may pay the same upon check or draft of the president, countersigned by the treasurer or otherwise signed in pursuance of the order of the board of directors, but so far as the evidence shows neither the treasurer nor the other members of the board of directors ever acted with the said T. W. Burnam in the matter of signing either the lease, the note, or the check of the company with which Burnam paid the first month's rental.

The law in this respect is best shown by the following citations: In the case of *Northwestern Packing Co.* v. *Whitney*, 5 Cal. App. 109 [89 Pac. 981], it is said: "Where a corporation is sought to be charged for a breach of an agreement which has not been performed, and there is no question as to estoppel or ratification, the by-laws of the corporation are admissible in evidence for the purpose of showing that the contract was not executed as the by-laws provide." In the case of *Crowley* v. *Genesee Mining Co.*, 55 Cal. 273, 275, it is also said: "The common law rule that a corporation has no capacity to act or make a contract except under its common seal has been long since exploded in this country.

In the United States nothing more is requisite than to show the authority of the agent to contract. That authority may be conferred by the corporation at a regular meeting of the directors or by their separate assent, or by any other mode of their doing such acts.'' In the case of *Read* v. *Buffum*, 79 Cal. 81 [12 Am. St. Rep. 131, 21 Pac. 555], it is said: ''In order to maintain his action, it was necessary for the plaintiff to allege an assignment to him by the California Powder Works of the claim sued on. And the denial of that allegation by the defendant cast the burden of proving it upon the plaintiff. This he attempted and failed to do. The secretary of the company, who executed the assignment on which plaintiff relies, is not shown to have had any power to make it. The ratification of the board of directors was not given until after the commencement of the action,— too late to avail the plaintiff anything, as he could not recover for a cause of action accruing after he commenced his action.'' Also in the case of *Fudickar* v. *East River Irr. Dist.*, 109 Cal. 29 [41 Pac. 1024], the following language is found: ''Being real property the interest sued for could be conveyed only by deed; and, to support the deed of a corporation (when, as in this case, it does not bear the corporate seal) it is incumbent on the party relying on it to show affirmatively that it was executed by authority of a resolution of the board of directors, entered on the records of the corporation, or that it was ratified by such a resolution.'' In the case of *Fontana* v. *Pacific Can Co.*, 129 Cal. 54 [61 Pac. 580], we find the following statement: ''Plaintiffs do not claim that there was any evidence, and there was none, showing that the directors of the corporation had, by resolution or by any other action, official or otherwise, authorized the president and secretary to make the contract; there is no evidence that either of these officers was clothed with general or special powers to make such a contract, or had any powers from which it might be inferred that they or either of them could make such a contract; there was no corporate seal attached; there is no evidence or claim of subsequent ratification by the directors of the corporation. The Pixley case is not authority for the broad proposition that the partial execution of a contract by a corporation raises the presumption of authority to make it. The presumption in that case arose from the established acts of the

directors of the corporation, as well as from the part execution of the contract. In the case here there is no evidence that the directors ever knew of the contract, much less authorized it by their conduct or acts. It is affirmatively shown that the contract bears no seal of the corporation, and its absence is not accounted for in any way. Besides, whatever presumption arose that the seal was attached was overcome by the admission that in fact no seal was attached.'' The foregoing citation practically fits the facts of this case.

Other cases cited in the briefs of counsel in this case are based upon actions in which the evidence shows ratification, as appears in *Western Lithograph Co.* v. *Vanomar,* 185 Cal. 366, 368 [197 Pac. 103], or, presumptive authority, as is brought out in the case of *Grummet* v. *Fresno Glazed Cement Pipe Co.,* 181 Cal. 510 [185 Pac. 388], where the action of the president warranted a presumption of authority but the granting of a nonsuit was not warranted without further hearing, or include matters not involved here.

It has been stated in various ways that a corporation is an artificial person without either mental or moral powers and cannot act except through its officers, and that it can only act in accordance with its by-laws by affixing the mark of its artificial body—its seal—by the act of an officer or a person duly authorized by resolution passed by at least the majority of its directors or in accordance with the signatures of a majority thereof, although the said corporation may be bound by acts or usual methods of business indulged in by its officers or agents, which although irregular, are either through negligence or otherwise apparently acquiesced in by the director of said corporation. It therefore behooved the plaintiffs in this case, as well as in all other dealings with corporate bodies, to give careful attention to the formalities of the execution of the lease, in conjunction with which the note was given, and if they relied upon implied or ostensible authority, everything calculated to put them upon their guard should also have been carefully observed.

■ After considering the above citations, we would again call attention to the fact that the lease and note in question herein were signed by the president without seal and without any formal authorization from the board of directors and that no knowledge of any authorization for such acts on the part of the said T. W. Burnam were shown to have been had by

the plaintiffs, nor was there any evidence to show that any such authorization had ever been given the said T. W. Burnam by the board of directors, and particularly that no consideration was received by the corporation nor any possession entered into under the lease in question. Therefore, we feel that the decision of the court in favor of the defendant was fully warranted by the evidence in the case.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.