[S. F. No. 12788. In Bank.—August 24, 1928.]

ATLANTIC FISH CO. (a Copartnership), Appellant, v. DOLLAR STEAMSHIP LINE (a Corporation), Respondent.

66

Milton L. Schmitt and Andros, Hengstler & Dorr for Appellant.

Nathan H. Frank, Irving H. Frank and Keith Ferguson for Respondent.

PRESTON, J.—This is an action to recover damages for detriment to a shipment of dried fish. The complaint pleads a contract between the parties whereby defendant agreed to carry said shipment under refrigeration from Boston to San Francisco and its failure through negligence so to do, as a result of which plaintiff sustained damages in the sum of $1,738.51. The answer denies these averments and sets up as a defense a contract to carry said goods under ventilation only. Made an exhibit thereto is a bill of lading to this effect, with the requirements of which faithful compliance is pleaded. Verdict and judgment were for plaintiff in the amount claimed, but upon motion of defendant a new trial was granted, predicated upon alleged insufficiency of the evidence. Defendant offered no testimony. The facts are these:

In July, 1924, plaintiff, through correspondence, purchased from Gorton-Pew Fisheries Company, Ltd., of Gloucester, Massachusetts, three hundred cases of codfish, upon the express understanding that the goods would be shipped under refrigeration to Boston, there to be transshipped under like refrigeration to the purchaser at San Francisco on board the steamship "President Hayes," one of defendant's vessels which touched at Boston and New York and was scheduled to sail about August 12, 1924. On August 4th and 8th space was reserved on said vessel by the shipper for plaintiff, which reservation read as follows: "Please arrange to store under refrigeration at a temperature of 35–40 de-

grees, sending forward on collect basis, sending bills of lading to us at Gloucester. . . . Will you kindly make notation on the bill of lading showing at what temperature these goods are stored." On August 8th the goods were shipped to Boston and on or about August 12th they were received by defendant on board the "President Hayes" and bill of lading was issued and delivered to the shipper in accordance with instructions and providing for shipment under refrigeration.

Following the issuance and delivery of said bill of lading and after the goods were on board and bound for San Francisco, via New York, to wit, on August 13, 1924, the shipper wired plaintiff at San Francisco as follows: "Dollar Line advised refrigerator compartment on Hayes disabled. Unable to handle shipment under refrigeration. Goods now on board bound for New York. Can store where it will receive ventilation. Shall we authorize or have shipment held at New York for next steamer? Answer quick." In reply to this message plaintiff wired on August 14th: "Authorize Hayes shipment to come through under ventilation."

The last-mentioned wire was dispatched by Mr. Colety, Jr., of the firm of plaintiff, a copartnership. Mr. H. M. Colety, the senior member of the firm, was absent at the time but returned the same evening, and the next morning, August 15, 1924, at 9 A. M., he called at the office of defendant in San Francisco and addressed himself to a Mr. Herman in the freight office, through whom he had previously transacted considerable business with defendant. He displayed the message he had received and the reply that had been sent and stated to Mr. Herman that at that season of the year these goods could not be safely shipped through the Panama Canal under ventilation but in order to preserve them it was necessary that they be shipped under refrigeration, whereupon, after consultation, Mr. Herman stated to Mr. Colety, Sr., that the refrigeration plant on the "President Hayes" would be repaired in New York and the goods would be shipped under refrigeration as theretofore ordered. Upon various occasions subsequent to said date and prior to the arrival of said shipment Mr. Coltey was assured by the said Herman that the goods were en route under refrigeration. Some ten days after the shipment left plaintiff received in the mail from the shipper a bill of

lading which showed that the goods were coming under ventilation. Mr. Colety again saw Mr. Herman and was assured that this bill of lading had come from the Boston office of defendant as his arrangements for refrigeration had been made with the New York office; hence there was no cause for alarm for the goods were coming under refrigeration as promised. At the time of the first conversation between Mr. Colety and Mr. Herman the steamer was either on the high seas or about to land at the port of New York, where she was to remain for several days before weighing anchor bound for San Francisco.

On August 15, 1924, the shipper wrote defendant's agent at Boston as follows: "Agreeable to your request we are returning bill of lading, #1084, covering . . . salt fish. . . . We also wish to confirm our conversation while in your office yesterday, instructing you to forward both of these shipments via the S. S. President Hayes, between decks where the goods will receive ventilation. We are writing the consignees today explaining to them fully just why it was necessary to take these steps and feel sure that they will see it in the right way. Please mail us corrected bill of lading at your earliest convenience so that we can arrange to forward them to our customers."

From this letter it is clear that the date borne by the bill of lading is erroneous, it being dated August 14, 1924, for the first bill of lading could not have been corrected or amended until subsequent to August 15, 1924. It is also apparent that the only difference between the bill of lading first issued and the amended or second bill of lading was as to the manner of shipment. The first bill called for refrigeration and the other for "cool stowage—not refrigeration."

We regret to say, after careful study of the record, that we believe that neither counsel has given consideration to the controlling legal problem presented thereby. The efforts of counsel have been directed toward discussion of the sufficiency of the evidence to support novation claimed to arise from the oral arrangement made between Mr. Colety and Mr. Herman. They have also discussed at great length the rule against parol testimony to vary the terms of a written contract. An extended discussion has also been made of the question as to whether or not local statutes and rules

of law are applicable, the contract being maritime, and of other questions.

Under our view of the case, as above intimated, these questions are not involved. . When defendant issued to the shipper for the benefit of plaintiff its first bill of lading providing for refrigeration and accepted said goods under such contract on board its vessel, it then and there covenanted on sufficient consideration to carry said goods from Boston to San Francisco under refrigeration. The subsequent consent of plaintiff to a change in the character of the stowage, secured through the wires of August 13th and 14th, was revoked or withdrawn before the consent to modification had been acted upon and a new bill of lading issued. The consent to the modification of the former valid and already issued bill of lading was without any consideration to support it until it had been acted upon by the carrier, and was, therefore, subject to withdrawal at any time before the defendant had suffered any detriment resulting therefrom. In other words, plaintiff received no consideration for the consent secured from it, and defendant suffered no detriment on account thereof. The senior member of the firm, acting for plaintiff, withdrew such consent within twenty-four hours after same was given and clearly before the change was acted upon by defendant to its detriment. Therefore, the first bill of lading, from and after its issuance, remained the true contract between the parties and defendant was required thereunder to transport said goods under refrigeration. Having failed to do so, the verdict and judgment against it were proper (Civ. Code, sec. 1605; *Western Lith. Co.* v. *Vanomar Producers,* 185 Cal. 366, 369 [197 Pac. 103]).

There being no basis for exercise of the discretion of the trial court, the order granting a new trial is reversed.

Richards, J., Shenk, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.

Hearing in Bank denied.

All the Justices present concurred.