**MEDO PHOTO SUPPLY CORPORATION and Alco Photo Supply Corporation, Petitioner,**

v.

**David LIVINGSTON, as President of District 65, Retail, Wholesale and Department Store Union, AFL–CIO, Respondent.**

**No. 66 Civ. 4467.**

United States District Court
S. D. New York.
July 13, 1967.

Baer, Marks, Friedman & Berliner, New York City, for petitioner.

Eugene G. Eisner, New York City, for respondent.

## Opinion

MOTLEY, District Judge.

Petitioner (the employer) and respondent (the union) entered into a collective bargaining agreement on November 30, 1965. The agreement was not signed until January 25, 1966. This agreement is effective from November 30, 1965 to November 30, 1968.

The prior collective bargaining agreement between the parties was for a period of two years i. e., December 2, 1963 to November 30, 1965. That old agreement contained a limited wage reopening clause providing for the negotiation of minimum rates for warehousemen in the General Help classification based on the uniform rates established by the union for warehousemen in other unionized establishments. In order to reopen the prior contract on this limited matter, the union was required to give the employer written notice 30 days prior to May 1, 1965. The union did not give notice until July 2, 1965 of its intention to seek an adjustment in the minimum wage of warehouse workers. The employer waived its objection to this late notice and agreed to submit the issue to arbitration after efforts by the parties to settle the issue had failed. Several delays ensued. A hearing was not held until November 15, 1965 before the arbitrator, Irving Halevy. Because a new agreement was about to be negotiated, the employer suggested to Professor Halevy that the parties attempt a resolution of the minor wage issue in connection with bargaining for the new agree-

ment. The arbitrator agreed and the arbitration was postponed. This second attempt to settle the warehousemen's minimum wage also failed, although the parties succeeded in writing the current agreement. The issue was then taken back to Professor Halevy. The question submitted to him was agreed upon on November 30, 1965 and was as follows:

"What retroactive wage adjustment, if any, should be paid to the employees for the period from May 1, 1965 to December 1, 1965, by reason of the wage reopening provision of the Collective Bargaining Agreement dated December 2, 1963."

A hearing on this issue was held on January 26, 1966. An award was not made until March 10, 1966. The new agreement effective November 30, 1965 had been reduced to writing and signed on January 25, 1966.

Arbitrator Halevy found that: 1) the union had the right to negotiate the minimum rates in question; 2) that he had been given authority to fix these rates effective May 1, 1965 to December 1, 1965. The retroactive wage, so far as relevant here, was established at $97.00 a week for warehousemen with five years experience and was awarded to them for the period May 1, 1965 to December 1, 1965 by Halevy.

After this award, the employer paid the five affected employees retroactive pay based on the $97.00 minimum for the period May 1, 1965 to November 30, 1965. The employer then paid one of these employees, Gutierrez, $97.25 per week and the other four employees $98.25 per week as of December 1, 1965 as shown on the Schedule attached to the agreement signed on January 25, 1966.

This dispute centers around these five employees and arises from the fact that at the time the new agreement was completed on November 30, 1965, the issue of their base wage remained unresolved.

The new agreement contained a Schedule which listed the employees in the bargaining unit by name and their then current weekly wage. The Schedule then showed what their wage would be on December 1, 1965, December 1, 1966 and December 1, 1967 based upon an agreed upon annual across-the-board wage increase of $4.00 per week on December 1, 1965 and December 1, 1966 and $3.00 per week on December 1, 1967 as follows:

## SCHEDULE

| Employees in Bargaining Unit As Of | Weekly Wage 11/30/65 | Weekly Wage 12/1/65 | Weekly Wage 12/1/66 | Weekly Wage 12/1/67 |
|---|---|---|---|---|
| Leon Del Francelay | $94.25 | $98.25 | $102.25 | $105.25 |
| Joseph Matthews | 94.25 | 98.25 | 102.25 | 105.25 |
| Melvin Styles | 94.25 | 98.25 | 102.25 | 105.25 |
| Sam Mallia | 94.25 | 98.25 | 102.25 | 105.25 |
| Ramon Gutierrez | 93.25 | 97.25 | 101.25 | 104.25 |

The union protested the employer's action in paying the five employees wages as shown on the Schedule. The union claimed that the base pay of these employees as of December 1, 1965 should have been $101.00 i. e., $97.00, the newly arbitrated minimum, plus the $4.00 across-the-board increase effective for all employees December 1, 1965.

The disagreement led the union to request arbitration. A printed form, supplied by the American Arbitration Association, requested the union to state the "Claim or Relief Sought". In reply the union wrote: "Failure of the Employer to comply with the terms of the current agreement." The form constituted the required notification to the

employer of the union's desire to arbitrate. The employer claims that it tried unsuccessfully to determine the precise grievance prior to the hearing. The Statement of Facts set forth by Arbitrator Lampert, who heard the matter, makes clear, however, that there was a hearing before him on September 21, 1966. At that time, the employer was represented by the same counsel who represents it here. The arbitrator's Statement also reveals that full opportunity was afforded the employer to "testify, otherwise present evidence, cross-examine and present argument." The parties were given 29 days to file briefs after the hearing.

At the hearing before Arbitrator Lampert, the employer "took the position that there was nothing to arbitrate, that the company was paying according to the Schedule and that the arbitrator, under 14(B), may not amend, modify, alter or subtract from this agreement or any provision thereof" (Lampert Opinion, Exhibit A, to the Petition).

Arbitrator Lampert, in his opinion, ruled, as follows:

The Arbitrator must reject the Company's argument. The Union is claiming that the Company is not paying what the agreement calls for and such an issue is arbitrable.

The agreement here is quite clear. Paragraph 9(A) grants a wage increase of four dollars to each of the employees on December 1, 1965, 9(B) grants an additional four dollars on December 1, 1966 and 9(C) grants a third increase of three dollars on December 1, 1967.

Paragraph 9(F) states that the schedule attached to the agreement lists the names of the employees, their wages as of November 30, 1965 and the weekly wages each was to receive 'on December 1, 1965, and thereafter, *in accordance with the provisions of this agreement.*'

The intention is quite obvious that all the schedule was meant to do was to spell out the mathematics involved.

Obviously, the information on the schedule was what the parties on January 25, 1966 knew the wages to be for November 30, 1965.

However, these figures for November 30, 1965 for the five men in question are not correct as they were subsequently changed retroactively by Professor Halevy's award of March 10, 1966.

On November 30, 1965 the wages of Del Francelay, Matthews, Styles, Mallia and Guiterrez were $97.00 per week. The increase of four dollars which went into effect, under Paragraph 9(A), on December 1, 1965 made their wages $101.00 on that date. It follows then, that if these men are still in the Company's employ on December 1, 1966 their wages will then be $105.00, and if still employed on December 1, 1967, the wage becomes $108.00."

The award which Lampert made is as follows:

"1. The Company has not been paying the correct wage under the agreement between the parties dated January 25, 1966 to Leon Del Francelay, Joseph Matthews, Melvin Styles, Sam Mallia and Ramon Gutierrez.

2. The correct weekly wage for Leon Del Francelay, Joseph Matthews, Melvin Styles, Sam Mallia and Ramon Gutierrez staring (sic) as of December 1, 1965 is $101.00.

3. The correct weekly wage for each of these five men as of December 1, 1966 is $105.00.

4. The correct weekly wage for each of these five men as of December 1, 1967 is $108.00.

5. There is due and owing from the Company to Leon Del Francelay, Joseph Matthews, Melvin Styles, Sam Mallia and Ramon Gutierrez the difference between the weekly wage paid and the weekly wage due based on $101.00 per week for the period from December 1, 1965 to the date of this award."

Arbitrator Lampert's award was made on October 25, 1966. The employer filed in this court on December 23, 1966, a motion and petition invoking the jurisdiction of this court under 29 U.S.C. 185 (Labor Management Relations Act of 1947, Section 301). The petition prayed for an order declaring invalid and vacating the arbitration award in favor of the union. The declaration and vacation are sought on the ground that Arbitrator Lampert exceeded his powers under the current agreement between the parties. 9 U.S.C. § 10. This motion was heard on February 14, 1967, along with a cross-motion filed by the union on January 12, 1967 for confirmation of the award. 9 U.S.C. § 9.[1] The employer filed an affidavit and memorandum in opposition to the motion to affirm. The employer's grounds for vacating the award and in opposition to affirmance are as follows:

The award (a) extends beyond the issue submitted; (b) clearly contradicts an express limitation on the arbitrator's powers; (c) patently admits on its face to be based on non-contractual grounds; and (d) manifests an infidelity to the arbitrator's contractual obligation to premise his award on the contract.

■ This court has jurisdiction to vacate or confirm an award under a collective bargaining agreement of the type here involved. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Torrington Co. v. Metal Products Workers Union Local 1645, UAW, AFL-CIO, etc., 362 F.2d 677 (2d Cir.

1966); Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 261 F.Supp. 832 (D.N.J.1966); 29 U.S.C. § 185(a).

■ This court, however, may not review the merits of the award. "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 596, 80 S.Ct. at 1360. The rationale behind the federal policy is that "the arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process." Ibid.

■ The power of this court upon a motion to vacate or affirm the award is limited to review of the question whether the arbitrator exceeded the limits of his contractual authority. Torrington Co. v. Metal Products Workers Union Local 1645, UAW, AFL-CIO, etc., 362 F.2d 677 (2d Cir. 1966).

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem * * * Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of

1. Article 14(D) of the collective bargaining agreement provides as follows:
"The arbitration procedure herein set forth is the sole and exclusive remedy of the parties hereto and the workers covered hereby, for any claimed violation of this contract, and for any and all acts or omissions claimed to have been committed by either party during the term of this agreement, and such arbitration procedure shall be (except to enforce, va-

cate or modify awards) in lieu of any and all other remedies, forums at law, in equity or otherwise which will or may be available to either of the parties. The waiver of all other remedies and forums herein set forth shall apply to the parties hereto, and to all of the workers covered by this contract. No individual worker may initiate an arbitration proceeding.

the award. United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361.

The arbitrator's authority under the collective bargaining agreement between the parties is defined in Article 14(A) and (B) of the agreement which provides as follows:

"14 *ADJUSTMENT OF DISPUTES*

(A) Adjustment of all complaints, controversies, disputes and grievances arising between the Employer and the Union concerning the interpretation, operation, application or performance of the terms of this agreement, or any complaint, controversy, dispute or grievance involving a claimed breach of any of the terms or conditions of this agreement, shall be undertaken in accordance with the following procedure. The matter shall first be taken up by representatives of the Employer and the Steward; if such dispute cannot be so adjusted by these persons, the matter shall be taken up by representatives of the Employer and the Union, and, if no adjustment can be arrived at, the dispute shall be submitted to an Arbitrator within twenty-four (24) hours after written notice has been given by either side to the other of the inability to adjust. Such written notice, as well as any other notice provided for in this agreement, shall be given to the Union at its headquarters, 13 Astor Place, New York City, and to the Employer at its place of business.

(B) The Arbitrator, as hereinabove mentioned, shall be selected by both sides by mutual agreement. In the event both sides fail to mutually agree on an Arbitrator within twenty-four (24) hours, either party may ask the State Board of Mediation, or the American Arbitration Association, to appoint an Arbitrator and such appointee shall be the Arbitrator in the matter involved. The decision of the Arbitrator shall be final and binding upon both parties and shall be fully enforceable. It is understood that the Arbitrator shall not have power to amend, modify, alter or subtract from this agreement or any provision thereof."

■ The issue submitted to Arbitrator Lampert by the union was: "Failure of the employer to comply with the terms of the current agreement." This court holds that the arbitrator's authority under Article 14(A) was manifestly extensive enough to encompass the issue submitted.

Arbitrator Lampert in his opinion rejected the employer's contention that there was nothing to arbitrate and that the employer was paying according to the Schedule. The arbitrator then rendered an opinion and made an award as set forth above. Arbitrator Lampert's award recites that the company had not been paying the correct weekly wage under the terms of the agreement. The award, therefore, is based on Arbitrator Lampert's reading of the contract.

The employer's first objection is that the award extends beyond the issue submitted. This court holds that the award was within the issue submitted to the arbitrator.

The employer's second objection is that the award clearly contradicts an express limitation on the arbitrator's powers contained in Article 14(B) of the agreement. This provision denies to the arbitrator power to "amend, modify, alter or subtract from [the] agreement or any provision thereof." Paragraph 9 of the agreement provides for wage increases as follows:

"9. *WAGE INCREASE*

(A) Effective December 1, 1965, all employees in the employ of the Employer shall receive a wage increase of $4.00 a week.

(B) Effective December 1, 1966, all employees in the employ of the Employer shall receive a wage increase of $4.00 a week.

(C) Effective December 1, 1967, all employees in the employ of the Em-

ployer shall receive a wage increase of $3.00 a week."

It is these increases which Arbitrator Lampert found were not being paid. However, crucial to the second objection is Lampert's finding that the figures contained in the Schedule attached to the agreement were not correct as to the wages of the five affected employees as of November 30, 1965, since they had been subsequently changed retroactively by Halevy.

■ Arbitrator Lampert's reliance on Arbitrator Halevy's award was for the purpose of establishing a fact in dispute, i. e., what the minimum wage of the affected employees was on December 1, 1965. Once that fact was established, the contract terms were then faithfully applied. This fact finding process is an integral part of an arbitrator's function in interpreting a contract or resolving any dispute within the broad authority granted the arbitrator under an agreement. Cf. Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., supra. "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361.

■ The employer did not challenge Halevy's award. The employer paid the retroactive wage from May 1, 1965 to December 1, 1965 as required by that award as to the five affected employees. The employer then refused to pay the increases set forth in Paragraph 9 supra. The only authority exercised by Lampert was to interpret or construe the contract increases as applicable to the new minimum wage of the five affected employees, once the employees entitlement thereto had been established by the facts which the arbitrator had the right to find. The court, consequently, concludes that there was no amendment, modification, alteration or subtraction from the agreement or any of its provisions.

Petitioner's next objection that the award patently admits on its face to be based on a non-contractual ground is without merit. There is no such admission. There is merely a finding by Lampert that certain wage rates had been changed retroactively by a prior award. As stated above, the present award is based on increases set forth in the contract.

Petitioner's final objection that the award manifests an infidelity to the arbitrator's contractual obligation to premise his award on the contract is likewise lacking in substance. The contract provided for the increased wages which the arbitrator awarded after finding facts which the arbitration process inherently required the arbitrator to find in resolving the dispute presented to him.

The employer's reliance on the *Torrington* case, supra, is inapposite. The vacated award there was based on a nonexistent provision of the contract— an implied provision—one which the arbitrator read into the contract. Moreover, as the majority opinion points out, the employer in *Torrington* had expressly withdrawn its approval of the unwritten provision ten months earlier by newsletter to the employees and by subsequent formal notice to the union. The majority then ruled that despite such withdrawal and contrary to an express limitation on the arbitrator's power, the arbitrator "added" something to the agreement which was not contained therein and then made his monetary award based on his addition. Here, there was no such addition; the award was based on agreed upon increases. Moreover, the employer here had not previously rejected the Halevy award. On the contrary, the employer had accepted and applied the Halevy award and had retroactively changed the minimum wage of the affected five year employees to $97.00 per week for the period May 1, 1965 to December 1, 1965.

■ What was then left for the arbitrator in this case was to settle a dispute as to whether the increases provided

**216**

for in the agreement applied to the five year employees in addition to the retroactive adjustment of their minimum wage. This was a question of interpretation, construction and application of the contract. "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 599, 80 S.Ct. at 1362.

For all the foregoing reasons, the cross motion of the union to confirm the arbitrator's award must be granted and the motion of the employer to vacate the award must be denied.