**Joseph LUCAS, Jr.**

v.

**PHILCO–FORD CORPORATION and Radio & Television Workers Local No. 101, of the International Union of Electrical Radio and Machine Workers, AFL–CIO.**

**Civ. A. No. 73–291.**

United States District Court,
E. D. Pennsylvania.

June 30, 1975.

---

Harold I. Goodman, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Leonard M. Sagot, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

This case comes before the court on a motion to vacate an arbitrator's award in a dispute growing out of plaintiff's discharge by his former employer, one of the defendants. The other defendant, plaintiff's local union, was not involved in this part of the proceedings.

In a prior opinion and order, I granted the employer's motion for summary judgment on condition that (1) the question of the legality of the plaintiff's discharge be submitted to binding and final arbitration under the auspices of the American Arbitration Association before an arbitrator acceptable to plaintiff, and (2) the plaintiff be permitted to argue the merits of his grievance without the advice or assistance of the union or its counsel. See *Lucas v. Philco-Ford Corporation,* 380 F.Supp. 139 (E.D.Pa.1974).

Having been set out at length in my previous opinion, the facts giving rise to this suit need not be belabored here. Suffice it to say that after nearly twenty years of employment by Philco-Ford, plaintiff, Joseph Lucas, Jr., was discharged for refusing to accept overtime assignments without having a "reasonable reason" within the meaning of the collective bargaining agreement between his union and employer. After exhausting three steps of the grievance procedure prescribed by the collective bargaining agreement, plaintiff brought suit against his employer for wrongfully discharging him and against his union local for failing to represent him fairly and for conspiring with the company to injure and harass him.

Pursuant to my conditional grant of summary judgment to Philco-Ford,[1] an arbitrator mutually acceptable to the parties was selected, and on November 21, 1974, a hearing was held in the Philadelphia offices of the American Arbitration Association. On March 3, 1975, the arbitrator issued an opinion and award holding that plaintiff was discharged for good cause and accordingly, denying his grievance. Following an

---

1. The motion of the defendant union was denied, see *Lucas v. Philco Ford Corporation,* 380 F.Supp. 139 (E.D.Pa.1974), and that portion of the suit is in preparation for trial.

unsuccessful effort to have the matter reconsidered,[2] plaintiff filed the instant motion to vacate the arbitrator's decision as manifestly contrary to both the facts and the law.

 Jurisdiction to review arbitration awards exists in this court pursuant to Section 301(a) of the Taft-Hartley Act of 1947, 29 U.S.C. § 185(a),[3] see, e. g., *Medo Photo Supply Corp. v. Livingston*, 274 F.Supp. 209, 213 (S.D.N.Y.), aff'd, 386 F.2d 451 (2d Cir. 1967); *Kracoff v. Retail Clerks Local Union No. 1357*, 244 F.Supp. 38, 40 (E.D.Pa.1965), and Section 10 of the United States Arbitration Act, 9 U.S.C. § 10,[4] see, e. g., *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275–76, 52 S.Ct. 166, 169, 76 L.Ed. 282 (1932); *Monte v. Southern Delaware County Authority*, 212 F.Supp.

604, 613 (E.D.Pa.), reversed on other grounds, 321 F.2d 870 (3d Cir. 1963).[5] Nevertheless, as plaintiff candidly concedes in his memorandum in support of the present motion, reviewing courts traditionally have been reluctant to set aside arbitrator's decisions.[6] This reluctance is consonant with the strong federal policy favoring the resolution of industrial disputes outside the courts, see, e. g., *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and stems from the recognition that "it is the arbitrator's construction which was bargained for." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.

2. By letter dated March 21, 1975, plaintiff's counsel requested reconsideration and redetermination of plaintiff's grievance by the arbitrator. According to procedures established by the American Arbitration Association, however, such a request required the agreement of the company, and in response to an inquiry from the Association counsel Philco Ford declined to consent. Appendix 217–26.

3. 29 U.S.C. § 185(a) provides that:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . .

4. 9 U.S.C. § 10 provides:
In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(a) Where the award was procured by corruption, fraud, or undue means.
(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

5. Judicial review of arbitration awards by Pennsylvania courts exists both by virtue of common law decisions, see, e. g., *Nationwide Mutual Insurance Company v. Barbera*, 443 Pa. 93, 277 A.2d 821 (1971); *Keller v. Local 249 I.B. of T.C., W. & H.*, 423 Pa. 353, 223 A.2d 724 (1966), and the Pennsylvania Arbitration Act of April 25, 1927, 5 P.S. § 161 et seq.

6. At common law, the grounds upon which an arbitration award could be vacated usually were limited to four: (1) fraud or corruption; (2) partiality by the arbitrator; (3) action by the arbitrator in excess of his authority; and (4) palpable mistake of fact on the face of the award. *Gramling v. Food Mach. & Chem. Corp.*, 151 F.Supp. 853, 857 (W.D.S.C.1957); Comment, *Commercial Arbitration Under the Federal Act; Expanding of the Scope of Judicial Review*, 35 U.Pitt. L.Rev. 799, 805 (1974); see Comment, *When May an Arbitrator's Award Be Vacated?*, 7 De Paul L.Rev. 236 (1958). Similar grounds are embodied in Section 12 of the Uniform Arbitration Act, and the Federal Arbitration Act, Note 5 *supra*.

Ed.2d 1424 (1960); see *United Steelworkers of America v. American Manufacturing Co., supra,* 363 U.S. at 568, 80 S.Ct. at 1346.[7]

██ Accordingly, the scope of my review of the arbitrator's award is narrowly circumscribed.[8] I can only disturb the award where there is a manifest disregard of the collective bargaining agreement, totally unsupported by principles of contract construction and the law of the shop; when fraud, partiality, or other misconduct on the part of the arbitrator is shown; or when the award violates the command of some law, is too vague and ambiguous to be enforced, or is inconsistent with public policy, *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128–29 n. 27 (3d Cir. 1969), and accompanying text. To borrow the language of the courts of appeals for the First and Fifth Circuits, the sole question before me is whether the arbitrator's decision is, "by reason of some circumstance outside the contract itself, 'so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling.'" *International Union of Electrical, Radio and Machine Workers, AFL–CIO v. Peerless Pressed Metal Corp.,* 489 F.2d 768, 769 (1st Cir. 1973), quoting *Safeway Stores v. Bakery Workers Local 111,* 390 F.2d 79, 82 (5th Cir. 1968).

██ With the foregoing precepts as my lodestar, and after a careful review of the record of the arbitration process, I conclude that the arbitrator's award must be confirmed. It has long been the rule that an award will not be set aside merely because the arbitrator erred in finding the facts or applying the law. See, e. g., *Orion Shipping and Trading Co. v. Eastern States Petroleum Corp.,* 312 F.2d 299, 300 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963); *Saxis Steamship Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577, 582 (2d Cir. 1967); *Transport Workers Union of Philadelphia, AFL–CIO, Local 234 v. Philadelphia Transportation Co.,* 283 F.Supp. 597, 599 (E.D.Pa.1968); see generally Comment, *Commercial Arbitration Under the Federal Act: Expanding the Scope of Judicial Review,* 35 U.Pitt.L. Rev. 799, 807 (1974). In this regard it must be remembered that it is the award, rather that the specific reasoning employed that a court must review. *Schlesinger v. Building Service Employees International Union, Local 252, AFL–CIO,* 367 F.Supp. 760, 764 (E.D. Pa.1973); *American Can Co. v. United Papermakers and Paperworkers, AFL–CIO,* 356 F.Supp. 495, 499–500 (E.D.Pa. 1973).

██ Plaintiff's fundamental dispute with the arbitrator's findings of fact centers around the reasons Lucas gave for refusing to accept overtime assignments. Plaintiff contends that he informed the company that his refusals primarily were the result of a gall bladder condition, and only secondarily because he wished to be at home to care for his children. The company, on the other hand, avers that Lucas grounded his refusals on his desire to be with his children, and was warned on numerous

---

7. A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of industrial self-government created by and confined to the parties. He serves their pleasure only, to administer the rule of law established by their collective agreement. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52–53 n. 16, 94 S.Ct. 1011, 1022 n. 16, 39 L.Ed.2d 147 (1974) quoting Shulman, Reason, Contracts and Law in Labor Relations, 68 Harv.L.Rev. 999, 1016 (1955).

8. A district court reviewing a labor arbitrator's award does not apply the same standards as a court of appeals reviewing a decision of the National Labor Relations Board. *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969); *Amalgamated Meat Cutters & Butcher Workmen of North America, Local 195 AFL–CIO v. Cross Brothers Meat Packers, Inc.,* 372 F.Supp. 1274, 1278 (E.D.Pa.1974).

occasions and ultimately discharged accordingly. On the present motion, plaintiff assigns as factual error the arbitrator's findings that (1) Lucas had never informed company personnel that his request to be excused from overtime work stemmed from a gall bladder condition; (2) the company did not dispute the seriousness of his illness; and (3) by championing the overtime work cause he had deliberately precipitated his own dismissal.

The arbitrator was fully justified in finding that plaintiff failed to inform his employer that his on-going refusal to accept overtime assignments was based on matters of health. Martin Miller, the labor relations and hourly personnel supervisor at the plant in which plaintiff worked, testified that Lucas never said he could not work overtime because of his gall bladder, App. 38, 40–41. And plaintiff's own testimony, while supporting his position at one point, *id.* at 86–88, contradicts it at another, *id.* at 112–14.

Plaintiff's contention that the arbitrator erred in concluding that the company did not dispute the seriousness of his condition confuses the time of the arbitrator's hearing in 1974 with the time of plaintiff's discharge in 1972. The company's position was that when Lucas was fired in 1972 he had offered no physical reason for his refusal to work more than eight hours per day. At that time, then, the company did dispute the existence of any physical justification because, according to Miller, none had been suggested by Lucas. During the arbitrator's 1974 hearing, however, the company did not deny Lucas may have had a gall bladder problem. It was to the company's 1974 position rather than its 1972 evaluation of Lucas to which the arbitrator referred. Plaintiff's true 1972 condition actually was irrelevant to the arbitrator's award because the arbitrator found that his condition, what-

ever it may have been, had never been communicated to the company.

Finally, the determination that plaintiff's conduct in championing the overtime cause precipitated his own discharge is amply supported by the record. App. 37–38, 50, 105–07. Accordingly, I conclude there was no abuse of the arbitrator's fact finding function.

Plaintiff assigns as errors of law the arbitrator's holdings that (1) Lucas' application for severance pay constituted an effective waiver of all rights to reemployment and would have barred further proceedings even had the union pursued the matter; (2) prior arbitration proceedings showed there was no real hope of success in the grievance procedure; (3) the failure of the company's plant physician to testify in response to Lucas' subpoena was not prejudicial; (4) the arbitration ruling "shall not be interpreted . . . as a finding that this decision lacks precedential value in the dispute of the grievant with the Union." [9]

At the outset, I am constrained to state that I fully concur in the arbitrator's determination that prior, similar arbitration proceedings all but foreclosed any hope of success on Lucas' part.

■ Plaintiff contends, however, that the arbitrator's conclusion that Lucas' application for and acceptance of severance pay constituted an effective waiver of any right to reemployment is contrary both to my earlier opinion in this case and to the decision of the court of appeals in *Hackett v. McGuire Brothers, Inc.*, 445 F.2d 442 (3d Cir. 1971). On both scores I disagree. Quoting a portion of a sentence out of context, plaintiff misreads my earlier opinion to include the effect of his acceptance of severance pay among the disputed material issues of fact ren-

9. App. 216.

dering summary judgment for the union inappropriate. Read in its entirety, however, the sentence makes plain that the controverted question for the fact-finder's determination was not the consequences of Lucas' accepting severance pay, but rather whether he had been accurately advised of the ramifications of that action. See 380 F.Supp. at 154. Indeed, the statement assumed implicitly, and in so doing foreshadowed the arbitrator's finding, that acceptance of his severance pay cancelled his accumulated seniority and cut off any right to reemployment.[10]

Nor does plaintiff's tortuous reading of *Hackett v. McGuire Brothers, Inc.,* *supra,* make that case apposite to the motion at bar. Far from standing for the proposition, as plaintiff argues, that the only consequence of accepting of severance or pension benefits is to mitigate damages, *Hackett* holds that where a pension plan makes no mention of mutually exclusive remedies, acceptance of earned pension benefits does not preclude an employee's action against his union and former employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

 Plaintiff's third assignment of legal error—the arbitrator's holding that no prejudice inured to Lucas from the failure of Philco-Ford's plant physician to testify in response to his subpoena [11]—can prevail only if it constitutes misconduct on the part of the arbitrator in refusing to hear evidence pertinent and material to the controversy, within the meaning of 9 U.S.C. § 10(c). The leading case in this Circuit on what constitutes misconduct of an arbitrator in refusing to hear evidence is *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968). Taking a common sense approach, the Court of Appeals held in that case that a fair accommodation between subsection (c) and the inherent nature of arbitration required that in order to justify vacation of an award, an arbitrator's refusal to hear evidence must not be simply an error of law, but also must so affect the rights of a party as to deprive him of a fair hearing. 397 F.2d at 599.[12]

---

10. The evidence supporting this conclusion is indisputable. In discussing this point the arbitrator found that:

About one month after his discharge, grievant applied for his separation pay. He explained at the hearing that he was in financial straits and needed the money. The application form reads:

"I hereby make application for the separation benefit due me under the provision of Section 7 of the Pension Plan of Philco-Ford Corporation. I fully understand that my acceptance of this separation benefit will cancel my service credited to date under the plan and will also cancel my accumulated seniority to date."

In addition, he filled out and signed a form captioned:

"Resignation from Employment." By that time, his grievance had been heard and denied in Third Step at a meeting at which he was present, and time for an appeal to arbitration had expired. App. 206–07.

11. The record offers no explanation for the company physician's failure to appear and plaintiff's memorandum of law states that it was for "undisclosed reasons." In any event, plaintiff made no request for an inquiry as to why the doctor failed to appear, made no request for any assistance in having the doctor produced, and failed to request a further hearing for the taking of the doctor's testimony.

12. In *Newark Stereotypers',* a labor union sought to vacate an award in a compulsory arbitration proceeding concerning the number of employees necessary safely to operate a new machine, on the ground of the arbitrator's alleged misconduct in refusing to investigate a claim that the employer had stifled a witness who previously had shown a willingness to testify in behalf of the union. The district court confirmed the award, and the court of appeals affirmed, holding that since the alleged suppression of evidence was not as a matter of law decisive or seriously harmful in light of other evidence which showed that the union had declined the subsequent offer of that witness to testify.

In the instant proceeding, there was no refusal by the arbitrator to hear the physician's testimony. Rather, the doctor simply failed to appear. Such a circumstance plainly fails to satisfy either Section 10(c) or *Newark Stereotypers'*. Moreover, the fact that plaintiff was not denied a fair hearing, nor prejudiced at all within the meaning of the Arbitration Act, is evident from the arbitrator's opinion, wherein he said:

> The failure of Dr. Escarte to testify at the arbitration hearing could not have prejudiced grievant's case. The Company did not dispute the seriousness of grievant's condition. However, any action affecting an employee's status was based, at least initially, on the medical opinion of the employee's own physician. This is the procedure usually preferred by workers because it avoids undue invasion of privacy by the plant physician. That the Company should have taken the initiative in evaluating grievant's health is a strange contention for grievant to advance, particularly since he was cognizant of Union affairs.[13] App. 213–14.

■ Plaintiff's final contention, that the arbitrator erred as a matter of law, in holding that his decision has value in Lucas' ongoing dispute with the union, although not without some merit, is insufficient to vacate the award. "As a general rule, an award can have no effect to establish rights or duties in favor of or against persons who are not par-

ties to the submission [footnote omitted]." 6 C.J.S. Arbitration and Award § 94 b, at 239; see, e. g., *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, supra, 312 F.2d at 300–01; *Interamerican Refining Corp. v. Texaco Maracaibo, Inc.*, 307 F.Supp. 1291, 1300 (D.Del.1970). An exception to the foregoing rule apparently has been carved out, at least in some states, to the extent that an award may be used as evidence for or against a stranger under certain circumstances. See 6 C.J.S. Arbitration and Award § 94 b, at 239. Although a similar exception arguably may exist under recently approved Federal Rules of Evidence,[14] as is the case with all potentially prejudicial evidence, the admissibility of the award would lie within the sound discretion of the trial judge.[15] See *United States v. Ravich*, 421 F.2d 1196, 1204–05 (2d Cir.), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); *Smith v. Spina*, 477 F.2d 1140, 1146 (3d Cir. 1973); McCormick on Evidence (2d ed.) § 185 at 440. For the time being then, the arbitrator's statement regarding the precedential value of his decision should be treated as surplusage, unnecessary to either the opinion or the award.

In concluding, I am reminded of a recent remark by Judge Rosenn:

> The discharge of an employee, especially one who has given many years of valuable service, is generally a painful and traumatic experience for both employer and employee.

---

13. That plaintiff alleges that the arbitrator erred in his finding that the company did not dispute the seriousness of his illness is irrelevant in this context, since that finding, in the arbitrator's view, made the testimony of the plant physician unnecessary, and consequently operated to Lucas' benefit here.

14. See Rules 105 and 803(8) (C), Fed.R.Evid.

15. The award's chief evidentiary value to the union, if indeed any exists, would appear to

be the arbitrator's conclusion that prior arbitration cases virtually precluded any likelihood that plaintiff would prevail against the company. While this arguably had some bearing on the motivation of the union in failing to press plaintiff's claim to final arbitration, it would have no impact whatever on any of the issues relating to credibility or good faith representation of Lucas by the local.

*Barnes v. Chatterton,* 515 F.2d 916, 918 (3d Cir. 1975).[16] While I fully echo these sentiments, I can find no reason to vacate the arbitrator's award. Plaintiff's motion accordingly will be denied.

---

16. Striking a similar chord, the arbitrator stated:

It is always a sad spectacle when a man saws off the branch on which he sits; it is tragic when deliberate confrontation wipes out the fruits of twenty years of labor and brings anguish and poverty to a family. On the other hand, a Company can provide employment to all of its workers only if deadlines are met and customer demands satisfied. In his long years of service grievant had learned the ways of a large corporation and knew about collective bargaining relationships from his union activities. Within the discretion left to line and staff supervision, he had received sympathetic attention. One cannot reasonably come to the conclusion that he found himself caught in the cogs of an unfeeling machinery as a helpless person unable to cope with the rules of an industrial organization. By his own testimony, he had had prior disciplinary problems. He participated in the life of the Local Union by running for office; and he picketted the plant to win his point in the forum of public opinion. Now, almost three years later, his stance leaves no doubt that he would take a different approach, could the clock be turned back. However, he missed his chance, and his grievance cannot be sustained.