[Civ. No. 67554. Second Dist., Div. One. June 15, 1983.]

FOREMAN ROOFING INCORPORATED, Petitioner and Respondent, v.
UNITED UNION OF ROOFERS, WATERPROOFERS AND
ALLIED WORKERS, LOCAL 36 et al.,
Petitioners and Appellants.

**COUNSEL**

Chapman & Rosen and William S. H. Chapman for Petitioners and Appellants.

C. Robert Ferguson for Petitioner and Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Counterpetitioner United Union of Roofers, Waterproofers and Allied Workers, Local 36 appeals from an order vacating an arbitration award and denying the counterpetition to confirm the award.[1] Certain dismissed respondents in the proceeding to vacate the arbitration award purport to appeal an order denying the awarding of costs to them.

### STATEMENT OF FACTS

On June 6, 1978, John B. Wallace, Jr. (Wallace), doing business as Foreman Roofing Company, a sole proprietorship, entered into a collective bargaining agreement with the predecessor in interest to counterpetitioner. Article X provided that the agreement was effective until August 15, 1980, "and for additional periods of one (1) year thereafter, unless not less than sixty (60) days prior to August 15, 1980, or sixty (60) days prior to the end of any subsequent yearly period, the signatory Contractor or the signatory Union, give written notice to the other of desire to modify, and/or amend, or terminate this agreement, . . ." Pursuant to article XI of the agreement, the signatory employer undertook obligations to contribute to various employee benefit plans and to file monthly transmittal reports.

On October 28, 1978, Wallace formed Foreman Roofing Incorporated, transferring the assets of the sole proprietorship thereto and doing business thereafter via the corporate entity. Wallace was the principal executive officer and manager of the corporation, and he and his wife were the sole shareholders.

---

[1] In actuality, counterpetitioner appeals from the court's statement of decision, filed April 28, 1982. Petitioner urges that the appeal is premature, in that petitioner sought declaratory relief in addition to vacation of the award. We note, however, that petitioner's brief states that declaratory relief cause of action was stricken and, in any event, the statement of decision in its role as a substitute for findings of fact and conclusions of law (Code Civ. Proc., § 632) decides all issues pertinent to a declaratory relief claim. Accordingly, we treat the appeal as taken in a timely fashion from the order vacating the award. (Code Civ. Proc., § 1294, subd. (c).)

Article III, paragraphs G and I of the collective bargaining agreement provide in pertinent part: "It will be considered a subterfuge to avoid the provisions of this Agreement if a Contractor bound hereby organizes or joins an entity . . . for the purpose of performing work which work would otherwise be performed under the provisions of this Agreement: an allegation of such subterfuge shall be processed as a grievance and, if upheld, the violating Contractor will be liable for the remuneration and benefits lost by employees hereunder.

". . . . . . . . . . . . . . . . . . . . . . .

"A Contractor-employer, defined within the meaning of this Agreement, shall include any successor or assignee of any Contractor signatory to this Agreement. A successor or Assignee includes any entity, whether individual, corporation or partnership, which acquires any of the assets and/or employs persons of a signatory Contractor-employer, which engages in the performance of any roofing work co-extensive with the work covered by Article I of the Agreement:

"(a) A Contractor-employer shall provide thirty (30) days written notice to the Union and all Trusts covered by this Agreement prior to entering into a sale or transfer of its assets." Although Wallace did not provide the union with advance notice of his intent to transfer his business assets to a newly formed corporation, he continued, after he began doing business via the corporation, to use union employees, file monthly transmittal reports and pay employee benefits as required by article XI. The monthly transmittal reports identified the employer as "Foreman Roofing, Inc." and Wallace utilized Foreman Roofing Incorporated checks to pay union benefits and union employee wages.

On June 12, 1980, Attorney Steven J. Hamilton wrote to counterpetitioner on behalf of "Our Client: Foreman Roofing Incorporation [sic], a California Corporation and John Wallace." Attorney Hamilton stated, "Please be advised that John Wallace is no longer doing business as Foreman Roofing Company, and hereby elects to terminate the above-referenced Agreement effective August 15, 1980 with respect to Foreman Roofing Company, a sole proprietorship. [¶] Furthermore, on behalf of our client, we request that said agreement be amended to reflect that Foreman Roofing Incorporated, . . . is the contractor and as such will renew the contract."

In April 1980, Wallace had resigned as president of the corporation; he was replaced by Donald Stokes (Stokes). However, Wallace continued to

be active in the roofing work of the corporation, as the "responsible managing employee"; he remained a director until July 22, 1980, and a principal shareholder until September 5, 1980. Throughout his association with the corporation, Wallace held a valid C-39 roofing contractor's license. Stokes became licensed in June 1981, and the corporation itself obtained a license in November 1981. Article III of the collective bargaining agreement provides: "Any person, persons, firm or corporation engaged in [roofing work] . . . shall be eligible to execute this Agreement provided such . . . Contractor: meets the following conditions:

"A. Be the holder of a Current C-39 License . . . . The holder of the license must execute this Agreement, together with the owner or principal officer of the company, if they are not one and the same as the holder of the license."

On July 7, 1980, Stokes transmitted the outstanding balance of the benefit payments due for the month of May with a cover letter, on stationery headed "Foreman Roofing Co.," addressed to "Joint Labor Relations." Stokes acknowledged therein his succession to the corporation and pledged his future cooperation with the union; he also attempted to disavow Wallace's business activities.

On April 28, 1981, counterpetitioner requested that "Foreman Roofing Co." be cited to appear before the Joint Labor Relations Board for failure to file monthly transmittal reports and to pay employee benefits for February and March 1981, pursuant to article XI of the collective bargaining agreement. On May 5, 1981, a notice to appear and subpoena duces tecum addressed to "Foreman Roofing Co." were served on Mary Stokes, secretary and chief financial officer of Foreman Roofing Incorporated at the business premises occupied by the corporation and formerly occupied by the sole proprietorship.

The matter was heard before an arbitration panel of the Joint Labor Relations Board on July 8, 1981. Foreman Roofing Incorporated appeared by its president, Stokes, in the company of Attorney C. Robert Ferguson, defending on the ground that the corporation was not a signatory to the collective bargaining agreement and Attorney Hamilton's June 12, 1980, letter was intended and effective as a notice of termination. At the conclusion of the hearing, the arbitration panel rendered an award of damages, finding that Foreman Roofing Incorporated had violated certain provisions of the collective bargaining agreement as charged. A copy of the award was served on the corporation on July 13, 1981.

CONTENTIONS

I

Counterpetitioner contends that the trial court erroneously ordered vacation of the arbitration award.

II

Certain respondents dismissed from the proceeding to vacate the arbitration award assert that the trial court erred in failing to award them costs.

III

Counterpetitioner avers that the trial court abused its discretion in setting the amount of attorney fees to be awarded petitioner.

DISCUSSION

I

We find merit in counterpetitioner's contention that the trial court erred in ordering vacation of the arbitration award.  ■  Inasmuch as the instant proceeding involves a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting interstate commerce, we are bound to apply federal substantive law. (*Department Store Employees Union* v. *Joseph Magnin Co.* (1981) 123 Cal.App.3d 410, 416 [176 Cal.Rptr. 650].) This extends to the law governing the scope of judicial review of an arbitrator's award and the grounds for vacation thereof. (See *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19 [136 Cal.Rptr. 378]; *Riess* v. *Murchison* (9th Cir. 1967) 384 F.2d 727, 735.)[2]

■ As enunciated in *Safeway Stores, Inc.* v. *Brotherhood of Teamsters* (1978) 83 Cal.App.3d 430 [147 Cal.Rptr. 835]: "The role of the court in reviewing the validity of an arbitration award under a collective bargaining agreement is an extremely narrow one. (*Amalgamated Meat Cut., etc.* v. *Cross Bros. M. P., Inc.* (3rd Cir. 1975) 518 F.2d 1113, 1121; *Aro, Inc.* v. *International Ass'n of Machinists* [E.D.Tenn. 1976] 414 F.Supp. 173, 174; *Lucas* v. *Philco-Ford Corporation* [E.D.Pa. 1975] 399 F.Supp. 1184, 1188.) The findings of the arbitrator on questions of law as well as questions

---

[2]State law governing these matters is, however, substantially the same as federal substantive law.

of fact are final and conclusive. Neither the merits of the controversy nor the sufficiency of the evidence to support the arbitrator's award are matters for judicial review. (*Steelworkers* v. *Enterprise Corp.* (1960) 363 U.S. 593, 596 [4 L.Ed.2d 1424, 1427-1428, 80 S.Ct. 1358]; *Bettencourt* v. *Boston Edison Co.* (1st Cir. 1977) 560 F.2d 1045, 1049; *Lucas* v. *Philco-Ford Corporation, supra,* 399 F.Supp. 1184, 1188.) '[A]n award will not be set aside merely because the arbitrator erred in finding the facts or applying the law.' (*Lucas* v. *Philco-Ford Corporation, supra,* 399 F.Supp. at p. 1188.) Erroneous reasoning by the arbitrator will not invalidate an otherwise proper award. 'A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award.' (*Steelworkers* v. *Enterprise Corp., supra,* 363 U.S. 593, 598 [4 L.Ed.2d 1424, 1428].) '[I]t is the award, rather than the specific reasoning employed that a court must review.' (*Lucas* v. *Philco-Ford Corporation, supra,* 399 F.Supp. 1184, 1188.)

"The court may not substitute its judgment for that of the arbitrator. 'A court must affirm an arbitrator's award if it "can in any rational way be derived from the agreement," *Amalgamated Meat Cutters etc.* v. *Cross Bros.,* 518 F.2d 1113 [3d Cir. 1975] and can only reverse if "there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop." *Ludwig Honold Mfg. Co.* v. *Fletcher,* 405 F.2d 1123, 1128 [3rd Cir. 1969].' (*C. P. Equipment Co.* v. *Intern. Ass'n of Machinists* (W.D.Pa. 1976) 415 F.Supp. 881, 882.)" (83 Cal.App.3d at pp. 436-437.)

■  Here, the trial court apparently concluded that the arbitration panel exceeded its powers in finding Foreman Roofing Incorporated to have violated certain provisions of the collective bargaining agreement. That finding necessarily encompasses implied findings that Foreman Roofing Incorporated was bound by the agreement as a successor to Wallace and that the agreement was not effectively terminated. These were questions of law and fact for the arbitration panel; that a different conclusion was possible does not empower a court to vacate the award. (See, e.g., *Steelworkers* v. *Enterprise Corp., supra,* 363 U.S. 593, 596 [4 L.Ed.2d 1424, 1427]; *Lucas* v. *Philco-Ford Corporation, supra,* 399 F.Supp. 1184, 1188.)

The conclusions reached by the arbitration panel are hardly irrational ones. Foreman Roofing Incorporated fits the definition of a successor bound by the agreement, recited in article III, paragraph I. ■ Moreover, an intent to be bound by a collective bargaining agreement may be manifested

by conduct. (*Const. Teamsters, etc.* v. *Con Form Const. Corp.* (9th Cir. 1981) 657 F.2d 1101, 1104.) Certainly Foreman Roofing Incorporated, by its conduct from October 1978 through July 1980, manifested an intent to be bound.

Further, we note that ordinary principles of contract law support the conclusion that, as of June 12, 1980, the right to terminate or renew the collective bargaining agreement rested solely with the corporation as successor in interest thereto. The transfer of title to any party or entity is an assignment of rights. (Civ. Code, § 1039; *Commercial Discount Co.* v. *Cowen* (1941) 18 Cal.2d 610, 614 [116 P.2d 599].) ■ An assignment carries with it all rights of the assignor (Civ. Code, § 1084; *Owsley* v. *Hamner* (1951) 36 Cal.2d 710 [227 P.2d 263, 24 A.L.R.2d 112]); and, where it is clearly the intent of the parties, as manifested by their conduct in the instant matter, the assignee succeeds to the obligations of the contract. (See Civ. Code, § 1589; *Walker* v. *Phillips* (1962) 205 Cal.App.2d 26 [22 Cal.Rptr. 727].)

■ Hence, although article X of the collective bargaining agreement speaks in terms of the manner in which a signatory contractor may terminate the agreement, it must be read to confer such a right on a successor contractor in the instant circumstances; for a contract is to be interpreted as a whole, giving effect to every part (Civ. Code, § 1641; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 760 [128 P.2d 665]), thereby avoiding an absurd construction. (*Masonite Corp.* v. *Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1, 10 [135 Cal.Rptr. 170]; see also *Baine* v. *Continental Assur. Co.* (1942) 21 Cal.2d 1, 5 [129 P.2d 396, 142 A.L.R. 1253].) Consequently, it was not wholly unreasonable for the arbitration panel to construe the June 12 letter as a belated notification of the corporation's successorship to the collective bargaining agreement rather than an effective notice of termination.

Finally, we note that the licensing issue, relied on so heavily by Foreman Roofing Incorporated in the court below, is a red herring. Paragraph A of article III of the collective bargaining agreement provides in pertinent part: "The holder of the license must execute this agreement together with the owner or principal officer of the company, if they are not one and the same as the holder of the license." This evinces an intent that a *member of the business entity* must hold a current C-39 roofing contractor's license, not necessarily that the *entity* be licensed. Moreover, in the case of a corporation, even if the *entity* is licensed, it cannot execute the agreement; for it is hornbook law that a corporation may act only through its officers. (*Halbert*

v. *Berlinger* (1954) 127 Cal.App.2d 6, 17 [273 P.2d 274]; see also *Peasley* v. *Producers Market Co., Inc.* (1927) 86 Cal.App. 577 [261 P. 733].)

Until April 1980, Wallace was the holder of the license and the principal officer of the company. Between April 1980 and September 1980, Stokes was the principal officer and Wallace the license holder. Hence, in that period, execution of a new agreement would simply have required the signatures of both. As of June 1981, Stokes was both principal officer and license holder. The status of matters between September 1980 and June 1981 is unclear, but of little importance. At the critical times—when the agreement either must be terminated or will renew automatically—the corporation was eligible to be a signatory contractor, in that an officer or manager thereof was properly licensed. That counterpetitioner might have preferred the corporation itself to be licensed created no barrier or legal disability to the corporation's status as signator-successor at these critical times.

■ In sum, the arbitration panel's award can, in some rational way, be derived from the collective bargaining agreement (*Amalgamated Meat Cut., etc.* v. *Cross Bros. M. P., Inc.* (3d Cir. 1975) 518 F.2d 1113); accordingly, counterpetitioner was entitled as a matter of law to confirmation of the award. (*Safeway Stores, Inc.* v. *Brotherhood of Teamsters, supra,* 83 Cal.App.3d 430, 437.) It necessarily follows that the trial court exceeded the applicable scope of review, and hence, abused its discretion in vacating the instant award.

## II

Certain respondents, dismissed from the proceeding to vacate the award, purport to appeal from an order denying them costs thereon. There is no such order on record; however, it is undisputed that the order vacating the arbitration award contains no award of costs on the dismissal. Therefore, we treat the appeal as taken from that order's failure to so award costs.

■ Costs are allowable as a matter of course to defendants dismissed from an action. (Code Civ. Proc., §§ 1031, 1033; *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 221 [145 Cal.Rptr. 691, 577 P.2d 1031].) To secure an award of costs, the party *in whose favor judgment has been entered* must file a verified memorandum of costs within 10 days of entry of the judgment. (Code Civ. Proc., § 1033 [prior to amendment by Stats. 1982, ch. 812, § 2].) ■ The respondents dismissed from the instant matter acceded to the entry of a voluntary dismissal with prejudice. Ordinarily, the entry is a ministerial act and does not itself constitute a

judgment. (*Wolters* v. *Rossi* (1899) 126 Cal. 644 [59 P. 143]; *MacLeod* v. *Tribune Publishing Co.* (1958) 157 Cal.App.2d 665, 668 [321 P.2d 881]; see also *Parenti* v. *Lifeline Blood Bank* (1975) 49 Cal.App.3d 331, 335 [122 Cal.Rptr. 709].) However, the dismissal of an action with prejudice is a final decision affecting the rights of the parties; thus, it will be given the effect of a final judgment. (*Spreckels* v. *Spreckels* (1916) 172 Cal. 789 [158 P. 543]; *Fisher* v. *Eckert* (1949) 94 Cal.App.2d 890, 894 [212 P.2d 64].) ██ In the case of a dismissal requested by plaintiff and thereafter entered in the clerk's register, the statutory period within which a verified memorandum of costs must be filed is triggered by the filing of a judgment or order awarding costs thereon. (See *MacLeod* v. *Tribune Publishing Co.*, *supra*, 157 Cal.App.2d 665, 668.)

The dismissed respondents made a sufficient request for an order awarding costs on the dismissal in the final paragraph of the points and authorities filed April 21, 1982; they had a right to such an order. While the clerk cannot be faulted for rejecting the memorandum of costs, in that there was no order in respondents' favor to which the clerk could relate it, it is the trial court's failure to make the appropriate order which deprived the dismissed respondents of their rightful costs.

### III

Inasmuch as the order vacating the arbitration award must be reversed, we need not reach counterpetitioner's final contention regarding the award of attorney fees.

The order vacating the arbitration award is reversed and the court is directed to enter a judgment confirming the award after further proceedings to determine the amount of attorney fees to be awarded counterpetitioner. The court is further directed to enter an order awarding the dismissed respondents their costs on dismissal and to accept the filing of a verified memorandum of costs pursuant thereto.

Lillie, J., and Disco, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.